**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**COURTHOUSE NEWS SERVICE**,

     *Plaintiff*,                         Case No.: 4:22-cv-106 MW/MAF

v.

**BRENDA D. FORMAN**, in her official
capacity as the Broward County Clerk
of Courts; the **FLORIDA E-FILING
AUTHORITY**; and **KAREN E. RUSHING**,
in her official capacity as chair of the
Florida E-Filing Authority,

     *Defendants*.

_____/

**PLAINTIFF COURTHOUSE NEWS SERVICE'S
OPPOSITION TO DEFENDANT BRENDA FORMAN,
AS BROWARD COUNTY CLERK OF COURTS'
<u>AMENDED MOTION TO DISMISS COMPLAINT</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ............................................................................... 1

BACKGROUND AND FACTUAL ALLEGATIONS ........................... 1

ARGUMENT ....................................................................................... 2

    I.     Applicable Standards For Rule 12(b)(6) Motions to Dismiss ............. 5

    II.    The Complaint States An Actionable Section 1983 Claim ................. 5

          A.    A 1983 Claim May Be Maintained Against A State
                 Official, In Her Official Capacity, for Prospective
                 Injunctive Relief ......................................................................... 6

          B.    CNS Has Alleged The Elements Of A 1983 Claim ................... 7

                 1.    The Complaint Alleges That Clerk Forman
                         Deprived CNS Of A Constitutional Right ....................... 8

                 2.    Clerk Forman Is Acting Under Color Of State Law ...... 12

          C.    Clerk Forman's *Monell* Argument Is Inapplicable ................. 13

    III.   Clerk Forman's Judicial Immunity Argument Lacks Merit ............. 15

    IV.   CNS Has Not Failed To Join An Indispensable Party ....................... 19

          A.    Neither The FSC Clerk Nor The Association Is
                 A Necessary Party .................................................................... 20

                 1.    The Court Can Provide Complete Relief Without
                         Joining The FSC Clerk .................................................... 20

                 2.    The Court Can Provide Complete Relief Without
                         Joining The Association ................................................... 22

          B.    Neither The FSC Clerk Nor The Association Claims
                 An Interest Relating To the Subject Of This Action ............... 24

V.    Abstention Is Not Warranted ................................................... 25

     A.    *Younger* Abstention Is Inapplicable ......................................... 25

     B.    Abstention Is Not Appropriate In Cases Involving
         First Amendment Rights ......................................................... 31

CONCLUSION .............................................................................. 33

LOCAL RULE 7.1(F) CERTIFICATE OF COMPLIANCE ............................... 34

CERTIFICATE OF SERVICE ............................................................. 35

# TABLE OF AUTHORITIES

Cases                                                                        Page(s)

*Ankenbrandt v. Richards*,
   504 U.S. 689 (1992) ........................................................................ 29

*Antoine v. Byers & Anderson, Inc.*,
   508 U.S. 429 (1993) ........................................................................ 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................... 5

*Attwood v. Clemons*,
   526 F. Supp. 3d 1152 (N.D. Fla. 2021) .............................................. 32

*Attwood v. Clemons*,
   818 F. App'x 863 (11th Cir. 2020) ...................................................... 8

*Baggett v. Bullit*,
   377 U.S. 360 (1964) ................................................................... 31, 32

*Barthlow v. Jett*,
   2008 WL 1985405 (M.D. Fla. May 2, 2008) ...................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................... 5

*Burns v. Reed*,
   500 U.S. 478 (1991) ........................................................................ 16

*Cate v. Oldham*,
   707 F.2d 1176 (11th Cir. 1983) ......................................................... 32

*City of Houston, Tex. v. Hill*,
   482 U.S. 451 (1987) ........................................................................ 32

*Colo. River Water Conservation Dist. v. U.S.*,
   424 U.S. 800 (1976) ........................................................................ 25

*Courthouse News Service v. Brown*,
   908 F.3d 1063 (7th Cir. 2018) ........................................... 4, 29, 30, 31

*Courthouse News Service v. Cozine*,
 2022 WL 1000775 (D. Or. Apr. 4, 2022) ................................................................ 8

*Courthouse News Service v. Gabel*,
 2021 WL 5416650 (D. Vt. Nov. 19, 2021) .................................................*Passim*

*Courthouse News Service v. Gilmer*,
 543 F. Supp. 3d 759 (E.D. Mo. 2021) ...................................................... 4, 29, 31

*Courthouse News Service v. Jackson*,
 2010 WL 11546125 (S.D. Tex. Mar. 2, 2010) ......................................................... 5

*Courthouse News Service v. N.M. Admin. Office of the Cts.*,
 2021 WL 4710644 (D. N.M. Oct. 8, 2021), *appeal filed*, No. 21-2135
 (10th Cir. Oct. 29, 2021) ...................................................................................... 8, 30

*Courthouse News Service v. Omundson*,
 2022 WL 1125357 (D. Idaho Apr. 14, 2022) ....................................................... 30

*Courthouse News Service v. Planet*,
 750 F.3d 776 (9th Cir. 2014) ........................................................................... 28, 32

*Courthouse News Service v. Planet*,
 947 F.3d 581 (9th Cir. 2020) ..............................................................*Passim*

*Courthouse News Service v. Planet*,
 2021 WL 1605216 (C.D. Cal. Jan. 26, 2021) ......................................................... 4

*Courthouse News Service v. Price*,
 2021 WL 5567748 (W.D. Tx. Nov. 29, 2021) ...................................................... 30

*Courthouse News Service v. Schaefer*,
 2 F.4th 318 (4th Cir. 2021) ................................................................................. 4, 30

*Courthouse News Service v. Schaeffer*,
 429 F. Supp. 3d 196 (E.D. Va. 2019) .................................................................... 29

*Courthouse News Service v. Tingling*,
 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016) ................................................... 4, 30

*Dream Defenders v. DeSantis*,
   2021 WL 4099437 (N.D. Fla. Sept. 9, 2021)....................................................... 32

*Edwards v. Wallace Cmty. College*,
   49 F.3d 1517 (11th Cir. 1995)................................................................................ 12

*Fla. Ass'n of Prof. Lobbyists v. Div. of Legisl. Info. Servs.*,
   2006 WL 8443465 (N.D. Fla. Apr. 25, 2006)...................................................... 32

*Forrester v. White*,
   484 U.S. 219 (1988) ......................................................................................... 15, 16

*G.H. by & through Henry v. Marstiller*,
   424 F. Supp. 3d 1109 (N.D. Fla. 2019).................................................................. 7

*Hartford Courant v. Pellegrino*,
   380 F.3d 83 (2d Cir. 2004)...................................................................................... 32

*Hunt v. Aimco Props., L.P.*,
   814 F.3d 1213 (11th Cir. 2016)................................................................................ 5

*League of Women Voters of Fla., Inc. v. Detzner*,
   354 F. Supp. 3d 1280 (N.D. Fla. 2018)............................................................ 32, 33

*LifeNet Health v. RTI Surgical, Inc.*,
   2019 WL 13162519 (N.D. Fla. Mar. 29, 2019) ...................................................... 5

*Luckey v. Harris*,
   860 F.2d 1012 (11th Cir. 1988)................................................................................ 8

*Major League Baseball v. Butterworth*,
   181 F. Supp. 2d 1316 (N.D. Fla. 2001)............................................................. 26, 27

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
   457 U.S. 423 (1982) ................................................................................................. 26

*Minn. Living Assistance, Inc. v. Peterson*,
   899 F.3d 548 (8th Cir. 2018)................................................................................... 31

*Mireles v. Waco*,
   502 U.S. 9 (1991) ..................................................................................................... 15

*Modlin v. City of Miami Beach,*
   201 So. 2d 70 (Fla. 1967) ...................................................................... 18

*Monell v. Dep't of Social Servs. of City of New York,*
   436 U.S. 658 (1978) .............................................................. 2, 5, 13, 15

*Morro v. City of Birmingham,*
   117 F.3d 508 (11th Cir. 1997) .............................................................. 13

*Oglala Sioux Tribe v. Fleming,*
   904 F.3d 603 (8th Cir. 2018) ................................................................. 31

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) .............................................................. 27, 28, 31

*Parker v. Butterfield,*
   2018 WL 6069657 (M.D. Fla. Nov. 1, 2018) ......................................... 16, 17, 18

*Perma-Liner Indus., LLC v. D'Hustler,*
   2022 WL 772736 (M.D. Fla. Feb. 9, 2022) ................................................. 24, 25

*Pittman v. Cole,*
   267 F.3d 1269 (11th Cir. 2001) ............................................................ 32

*Press-Enterprise Co. v. Super. Ct. of Cal. for Riverside Cty.,*
   478 U.S. 1 (1986) .............................................................................. 8, 9

*Provident Tradesmens Bank & Trust Co. v. Patterson,*
   390 U.S. 102 (1968) ......................................................................... 19

*Richmond Newspapers, Inc. v. Va.,*
   448 U.S. 555 (1980) ............................................................................ 9

*Rizzo v. Goode,*
   423 U.S. (1976) ............................................................................... 28

*SKS & Assocs., Inc. v. Dart,*
   619 F.3d 674 (7th Cir. 2010) .............................................................. 30, 31

*Smith v. City of Gainesville,*
   2014 WL 29440 (N.D. Fla. Jan. 3, 2014) ................................................. 12

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013) ............................................................... 26, 31

*State ex rel. Druissi v. Almand*,
    75 So. 2d 905 (Fla. 1954) ................................................... 16, 18

*State ex rel. Miami Herald Publ'g Co. v. McIntosh*,
    340 So. 2d 904 (Fla. 1976) ...................................................... 1

*State Farm Mut. Auto. Ins. Co. v Performance Orthopaedics*
    *& Neurosurgery, LLC*,
    278 F. Supp. 3d 1307 (S.D. Fla. 2017) ....................... 20, 24, 25

*Times Publ'g Co. v. Ake*,
    660 So. 2d 255 (Fla. 1999) ...................................................... 7

*Tokyo Gwinnett, LLC v. Gwinnett Cty., Ga.*,
    940 F.3d 1254 (11th Cir. 2019) .......................................... 25, 26

*U.S. v. Janke*,
    2009 WL 2525073 (S.D. Fla. Aug. 17, 2009) ..................... 24, 25

*Vega v. Sawyer*,
    2020 WL 978004 (M.D. Fla. Feb. 28, 2020) ......................... 7

*W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*,
    2010 WL 11504833 (S.D. Fla. Jan. 7, 2010) ................... 24, 25

*Watts v. City of Hollywood, Fla.*,
    146 F. Supp. 3d 1254 (S.D. Fla. 2015) ................................ 13

*West v. Atkins*,
    487 U.S. 42 (1988) ................................................................... 7

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ............................................................... 6, 7

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ................................................ 18

*Younger v. Harris*,
    401 U.S. 37 (1971) ........................................................*Passim*

Statutes

42 U.S.C. § 1983 ................................................................................*Passim*

Rules

Fed. R. Civ. P. 19(a)(2) ........................................................................ 19, 20

Fed. R. Civ. P. 19(a)(2)(A) ........................................................................ 19

Fed. R. Civ. P. 19(b) ................................................................................... 19

## INTRODUCTION

Plaintiff Courthouse News Service ("CNS") files this Opposition to Defendant Brenda Forman, As Broward County Clerk of Courts' Amended Motion To Dismiss Complaint (ECF No. 26), filed on April 12, 2022 ("MTD").

## BACKGROUND AND FACTUAL ALLEGATIONS

CNS's claim is straightforward: the First Amendment bars Defendants from withholding access to newly filed, non-confidential civil complaints while they languish in a review queue awaiting clerical processing.  "News delayed is news denied," as the Florida Supreme Court has explained.  "To be useful to the public, news events must be reported when they occur."  *State ex rel. Miami Herald Publ'g Co. v. McIntosh*, 340 So. 2d 904, 910 (Fla. 1976); *see also CNS v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020) ("*Planet III*") ("[T]he public interest in obtaining news is an interest in obtaining contemporaneous news.").

CNS asserts a single count, pursuant to 42 U.S.C. § 1983, for infringement under color of state law of its First Amendment right of access to civil complaints. The Complaint names three Defendants: (1) Clerk Brenda D. Forman, in her official capacity as the Broward County Clerk of Courts ("Clerk Forman"), (2) the Florida E-Filing Authority (the "Authority"), and (3) Karen E. Rushing, in her official capacity as chair of the Authority.  The Complaint is rife with allegations identifying Clerk Forman's specific actions depriving CNS of its constitutional access rights,

*see* Complaint (ECF No. 1) ¶¶ 52-61, as well as allegations showing how the Defendants' combined actions violate the First Amendment, *id.* ¶¶ 4, 5, 9 & 50. Thus, the Complaint states a claim for relief and Clerk Forman's MTD should be denied.

## ARGUMENT

Clerk Forman raises a variety of arguments for dismissing the Complaint, but each one misses the mark. First, Clerk Forman creates a strawman by arguing CNS has not adequately pled a claim under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978). *See* MTD at 11-19. In *Monell*, the Supreme Court established that local municipalities (and their officials) can be sued under Section 1983 but only where the constitutional violation occurred pursuant to a municipal policy or custom. Clerk Forman's *Monell* argument is a distraction, however, because she asserts that she is a state official, *not* a municipal official, meaning the *Monell* analysis is not relevant here. As demonstrated below, CNS undoubtedly has pled a claim against Clerk Forman in her capacity as a state official.

Clerk Forman's next gambit is to recast CNS's Complaint as "tak[ing] issue with the Authority's failure to upgrade the Portal to include a public review queue." MTD at 3. While a public review queue is one way to remedy the constitutional wrong challenged in this case, at its heart, that is not what this case is about. This case challenges Defendants' policies and practices of withholding complaints while

they await clerical processing; the Complaint more than adequately alleges that Clerk Forman is responsible for that unconstitutional conduct.

Clerk Forman then argues CNS is not entitled to injunctive relief because she enjoys judicial immunity. Not so. Administering public access to newly filed civil complaints is an administrative task, not a judicial one. Therefore, judicial immunity does not apply.

Under Rule 19, Clerk Forman next asserts CNS has failed to join two indispensable parties, namely the Clerk of the Florida Supreme Court and the Florida Association of Court Clerks, Inc. In support, she again mischaracterizes the Complaint as being solely about establishing a public review queue available at the Portal, which she claims is not within her control. But the Complaint actually alleges a broader violation. It concerns withholding access to complaints until processing is completed by Clerk Forman's Office. *See* Complaint ¶¶ 52-64, 67-68. As discussed below, the Court can provide complete relief based upon the currently joined parties.

Finally, Clerk Forman maintains the Court should abstain from taking jurisdiction over this case pursuant to the *Younger* abstention doctrine. But Clerk Forman is wrong as a matter of law, because *Younger* abstention is available only in situations where there is a parallel, ongoing state court proceeding. Because no such state-level proceeding is occurring, *Younger* does not apply. And in making her

argument, Clerk Forman tellingly ignores other federal cases brought by CNS that have rejected abstention arguments similar to the one Clerk Forman makes here. Instead of addressing those cases, Clerk Forman's argument reads as though *CNS v. Brown*, 908 F.3d 1063 (7th Cir. 2018) and *CNS v. Gilmer*, 543 F. Supp. 3d 759 (E.D. Mo. 2021), represent the entire universe of the law in this area, overlooking that other federal circuit and district courts have rejected *Brown*'s and *Gilmer*'s view of abstention as "outliers," and instead issued relief that does not offend principles of comity and federalism because the relief granted did not involve the sort of "ongoing federal audit" of state proceedings that *Younger* seeks to prevent.  Abstention is simply not appropriate here, where First Amendment rights are at stake.

CNS has stated a viable and compelling claim that must be adjudicated.  In fact, courts across the country have recognized that a First Amendment right of access to non-confidential civil complaints attaches upon receipt of such complaints for filing and that prohibiting public access until after clerical processing violates the First Amendment.  *See* Complaint ¶ 10; *see also CNS v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021); *Planet III,* 947 F.3d at 596-97, and, on remand, *CNS v. Planet*, No. CV 11-8083-DMG (FFMx), 2021 WL 1605216, at *1 (C.D. Cal. Jan. 26, 2021); *CNS v. Gabel,* No. 2:21-cv-000132, 2021 WL 5416650, at *13 (D. Vt. Nov. 19, 2021); *CNS v. Tingling*, No. 1:16 Civ. 8742 (ER), 2016 WL 8739010, at *19

(S.D.N.Y. Dec. 16, 2016); and *CNS v. Jackson*, No. 4:09–CV–01844, 2010 WL 11546125, at *1-2 (S.D. Tex. Mar. 2, 2010). Clerk Forman's MTD should be denied.

## I.   Applicable Standards For Rule 12(b)(6) Motions To Dismiss.

On a Rule 12(b)(6) motion, the Court accepts the complaint's allegations as true and construes them in the light most favorable to the plaintiff. *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *LifeNet Health v. RTI Surgical, Inc.*, No. 1:18-cv-00146MW/GRJ, 2019 WL 13162519, at *1 (N.D. Fla. Mar. 29, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the Complaint plainly alleges facts sufficient to state a claim for relief that is more than plausible on its face.

## II.   The Complaint States An Actionable Section 1983 Claim.

Clerk Forman argues that CNS has not stated a viable Section 1983 claim. MTD at 11-20. In particular, she argues that CNS's claim fails under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978), because she is a state official, not a municipal official. But this entire argument ignores that state officials acting under color of state law are subject to Section 1983 liability for prospective injunctive relief. Clerk Forman likewise argues that CNS has not pled

an unlawful policy or custom and has not pled that such policy or custom caused the violation of CNS's First Amendment rights.  In doing so, she ignores CNS's allegations that Clerk Forman has a policy and practice of withholding complaints while they languish in a review queue, sometimes for days.  As further shown below, CNS has indisputably pled a viable Section 1983 claim.

### A.   A 1983 Claim May Be Maintained Against A State Official, In Her Official Capacity, For Prospective Injunctive Relief.

Section 1983 provides, among other things, that a "person" who, under color of state law, causes a plaintiff to be deprived of his constitutional rights, shall be liable for that deprivation.  *See* 42 U.S.C. § 1983 (2021).  The Supreme Court has made clear that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (internal quotation omitted).

Here, Clerk Forman is sued in her official capacity for injunctive relief.  Clerk Forman maintains that she is a state official, not a municipal official.  *See* MTD at 12.  According to Clerk Forman, she undertook the acts at issue "in her role as an arm of the judicial branch (which is, in turn, deemed a state agency under Florida's constitution)."  *Id.* at 12.  She further notes that the Florida Supreme Court has held that, "when acting under the authority of their article V powers concerning judicial records and other matters relating to the administrative operation of the courts,"

circuit court clerks are "an arm of the judicial branch." *Id.* at 12-13 (citing *Times Publ'g Co. v. Ake*, 660 So. 2d 255, 257 (Fla. 1999)).

Clerk Forman thus concedes that she *is* a proper defendant here. There is no question that a plaintiff may maintain a Section 1983 action against a state official, sued in her official capacity, for injunctive relief, just as CNS has sued Clerk Forman. *See* Complaint ¶ 15; *Will*, 491 U.S. at 71, n.10; *G.H. by & through Henry v. Marstiller*, 424 F. Supp. 3d 1109 (N.D. Fla. 2019) (Walker, J.) (plaintiff properly sued state official defendant in her official capacity for injunctive relief under Section 1983). Clerk Forman proffers no argument as to why she, as an admitted state official, would be outside the ambit of Section 1983.

## B.    CNS Has Alleged The Elements Of A 1983 Claim.

To state a Section 1983 claim, CNS "must first allege a violation of a right secured by the Constitution or under the law of the United States; and, second allege that the deprivation was committed or caused by a person acting under color of state law." *Vega v. Sawyer*, No: 2:18-cv-723-FtM-29NPM, 2020 WL 978004, at *2 (M.D. Fla. Feb. 28, 2020) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). As the Eleventh Circuit has explained, a plaintiff suing a state official in her official capacity is *not* required to prove that she acted pursuant to a governmental policy or custom: "Our own precedent indicates that the constitutional deprivation need not be pursuant to the enforcement of a state law or policy; any act by a state official –

as long as it is performed under color of state law – is sufficient." *Attwood v. Clemons*, 818 F. App'x 863, 868 (11th Cir. 2020). In short, "[a]ll that is required is that the official be responsible for the challenged action." *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988). CNS has alleged both necessary elements of its Section 1983 claim.

### 1. The Complaint Alleges That Clerk Forman Deprived CNS Of A Constitutional Right.

The Complaint alleges in detail that, as a matter of "experience" and "logic" CNS has a qualified First Amendment right of access to newly filed, non-confidential civil complaints that attaches upon receipt of those complaints for filing. *See* Complaint ¶¶ 10, 41-46; s*ee also Press-Enterprise Co. v. Super. Ct. of Cal. for Riverside Cty.*, 478 U.S. 1, 9 (1986) ("*Press Enterprise II*"); *Gabel*, 2021 WL 5416650, at *13 ("qualified First Amendment right of access attaches when a complaint is electronically filed"); *CNS v. Cozine*, No. 3:21-cv-680-YY, 2022 WL 1000775, at *2 (D. Or. Apr. 4, 2022) ("right of access to civil complaints attaches when they are submitted to the court"); *CNS v. N.M. Admin. Office of the Cts.*, No. CIV-21-0710 JB/LF, 2021 WL 4710644, at *39 (D. N.M. Oct. 8, 2021) ("qualified right attaches when the complaint is filed in a traditional sense – when it is in the court's possession") (internal quotation omitted), *appeal filed*, No. 21-2135 (10th Cir. Oct. 29, 2021).

The Complaint specifically alleges – and cites to precedent demonstrating – that "civil filings and complaints have historically and repeatedly been deemed open to the public and press within the Eleventh Circuit." *Id.* ¶ 24. The Complaint explains how the process worked for paper court filings and describes the public bins where complaints were placed for pre-processing review. *See id.* ¶¶ 43-44. It likewise alleges that:

> Since time beyond memory, the press in Florida and across the nation reviewed new civil complaints when they crossed the counter and before docketing, or what is now called processing. Journalists reviewed new complaints as part of their coverage of the courthouse because complaints often contained news of local and national import. Those complaints were available for viewing quickly and whenever the court was open for business.

*Id.* ¶ 1; *see also id.* ¶ 41.

These allegations satisfy the "experience" and "logic" prongs of the *Press-Enterprise II* framework, establishing the basis for the right of access here. *See also Planet III*, 947 F.3d at 589 ("The presumption of access to judicial proceedings flows from an 'unbroken, uncontradicted history' rooted in the common law notion that 'justice must satisfy the appearance of justice.'") (quoting *Richmond Newspapers, Inc. v. Va.*, 448 U.S. 555, 573-74 (1980)).

The Complaint similarly alleges that Clerk Forman's withholding of public access to complaints, "while they sit in an electronic work queue and until a clerk completes processing," is not constitutionally justifiable and "unnecessary and

avoidable through less restrictive means readily available to Defendants." Complaint ¶¶ 6, 26-27, 59, 76. *See Gabel*, 2021 WL 5416650, at *15 ("Defendants offer no evidence that staff review of signatures, filing fees, and filing codes is necessary to protect the orderly administration of justice.").

The Complaint further alleges that the extent and regularity of the delays in Broward County are especially flagrant.  For example, CNS alleges that: (1) Clerk Forman has "failed to comply with written requests to stop blocking public and press access until clerical processing is complete" (Complaint ¶ 5); (2) "complaints are withheld from Courthouse News and the public until Clerk Forman's Office completes processing. Only then is a complaint made publicly available through Clerk Forman's website" (*id.* ¶ 19); (3) the policy of Clerk Forman's Office on the availability of new complaints is that they "should be made available to the public [in] 'two days for case filings and three days for supplemental filings 80 percent of the time'" (*id.* ¶ 55); (4) and in Broward, "nearly 87% of complaints [are] unavailable on the day of their filing" (*id.* ¶ 61); s*ee also id.* ¶¶ 4, 6, 9, 49, 53.  A chart included in the Complaint breaks out access totals with delay percentages (to the hundredth point).  *See id.* ¶ 60 (chart).  Thus, CNS repeatedly alleges how Clerk Forman is responsible for withholding access.

CNS further alleges how the actions of Clerk Forman and the other Defendants also combine to cause an unconstitutional withholding of access and

how the presence of all defendants, including Clerk Forman, is necessary to provide CNS complete relief. *Id.* ¶ 19. For instance, the Complaint alleges that: (1) Defendants together "have the power to provide traditional access, but they have failed to comply with written requests to stop blocking public and press access until clerical processing is complete" (*id.* ¶ 5); (2) they could "provide pre-processing access to new civil complaints through a public review queue (or other practicable alternatives used by state and federal courts)" (*id.* ¶ 6); (3) Clerk Forman has a "longstanding policy" of "withholding public access to complaints until clerical processing is completed" (*id.* ¶ 57); and (4) the "means to provide pre-processing access to non-confidential Broward County Circuit Court Civil e-filed complaints are readily available to Defendants" (*id.* ¶ 64).

Clerk Forman ignores each of the foregoing allegations and instead tries to reframe the Complaint as solely challenging the lack of a public review queue. While a public review queue is one less restrictive option that would restore traditional access, it is not the constitutional violation challenged here. Rather, CNS challenges Defendants' policies and practices of withholding newly filed, non-confidential circuit civil complaints until after the completion of clerical processing by Clerk Forman and her staff. Hence, the Complaint alleges that Clerk Forman – alone and in combination with the other Defendants – has caused the constitutional deprivation and is needed to provide CNS complete relief.

### 2.      Clerk Forman Is Acting Under Color Of State Law.

As to the second factor, it is beyond dispute that Clerk Forman is acting under color of state law when she administers public access to court records.  Indeed, "[a] person acts under color of state law when he acts with authority possessed by virtue of his employment with the state."  *Smith v. City of Gainesville*, No. 1:13-cv-166-MW/GRJ, 2014 WL 29440, at *1 (N.D. Fla. Jan. 3, 2014) (citing *Edwards v. Wallace Cmty. College*, 49 F.3d 1517, 1522 (11th Cir. 1995)).  The Complaint alleges that Clerk Forman is the Broward County Clerk of Courts and is responsible for "the administration of public access to court records, including new non-confidential Seventeenth Judicial Circuit of Florida civil complaints."  Complaint ¶ 15.  Her MTD does not dispute these allegations.  To the contrary, Clerk Forman contends she is a "state actor."  *See* MTD at 13.  Moreover, it is clear that Florida Clerks of Court act under color of state law for purposes of Section 1983 claims.  *See Barthlow v. Jett*, No. 3:06-cv-1056-J-33MCR, 2008 WL 1985405, at *3, n.3 (M.D. Fla. May 2, 2008). Thus, the allegations in the Complaint are more than sufficient to plead that Clerk Forman acted under color of state law.

All told, CNS has pled a viable Section 1983 claim because it has alleged that Clerk Forman, acting under color of state law, has deprived CNS of its First Amendment access rights.

### C.    Clerk Forman's *Monell* Argument Is Inapplicable.

Clerk Forman devotes much of her Rule 12(b)(6) argument to disputing whether CNS has pled a *Monell* claim. MTD at 11-19. That argument is patently irrelevant.

In *Monell*, the Supreme Court held "that ***municipalities*** may not be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior.* Instead, municipalities may only be held liable for the execution of a governmental policy or custom." *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997) (emphasis added). Thus, a 1983 plaintiff seeking to hold a ***municipality*** liable under a *Monell* claim must prove the existence of a governmental policy or custom.  But where the defendant is a state actor, *Monell* is no shield from liability.  As Clerk Forman acknowledges, "the *Monell* framework is altogether inapplicable [where] the acts Plaintiff complains of do not amount to municipal conduct, but rather state conduct." MTD at 13.

Nevertheless, even if Clerk Forman were a municipal actor – contrary to what she asserts in the MTD – the Complaint would still state a viable cause of action.  To do so, a plaintiff must demonstrate "a causal connection between the violation and the municipal policy or custom." *Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1270 (S.D. Fla. 2015).

13

While not required, the Complaint manifestly alleges, repeatedly, that the withholding of civil complaints in Broward County is caused by a policy or custom of the Clerk's Office.  *See, e.g.*, Complaint ¶¶ 49-50, 52-69.  For example, the Complaint alleges that "access delays in Broward County have been a chronic problem" going back at least two decades. *Id.* ¶¶ 52-53.  It further alleges that "Clerk Forman's Office . . . acknowledged that new complaints are rarely made publicly available on the day of filing" and that her Office "explained its *policy* on when complaints should be made available to the public as 'two days for case filings and three days for supplemental filings 80 percent of the time.'"  *Id.* ¶ 55 (emphasis added & quoting Response of Florida Court Clerks & Comptrollers to the News Media Coalition's Report – "Tour of Florida Courthouses to Access Court Records").  The Complaint also alleges that "[d]elays in Broward County have existed for years because that county has a *longstanding policy*, which was continued by Clerk Forman, of withholding public access to complaints until clerical processing is completed."  *Id.* ¶ 57 (emphasis added).  And the Complaint alleges that Defendants' "*policies and practices* of withholding access to complaints until after clerical processing denies Courthouse News – and by extension its readers and the public – access to newly filed civil complaints."  *Id.* ¶ 62 (emphasis added).  Clerk Forman's suggestion that CNS has failed to plead a policy or custom of hers that causes a First Amendment violation is absurd.

14

Clerk Forman's *Monell* argument is misdirected and demonstrably wrong because it is contradicted both by the facts Clerk Forman acknowledges and those alleged in the Complaint, facts that must be accepted as true in response to the MTD.

## III. Clerk Forman's Judicial Immunity Argument Lacks Merit.

Clerk Forman next argues that Section 1983 prohibits injunctive relief against judicial officers, including Clerk Forman, for acts or omissions taken in their judicial capacity, unless the judicial officer violated a declaratory decree or declaratory relief is unavailable. *See* MTD at 19-20. Although she does not use the terminology, Clerk Forman is arguing she is entitled to judicial immunity. While Section 1983 generally precludes injunctive relief against a judicial officer "for an act or omission taken in such officer's *judicial capacity*," 42 U.S.C. § 1983 (emphasis added), it does not preclude injunctive relief based on *administrative* action (or inaction) by a judicial officer.

As the Supreme Court has explained, judicial immunity is grounded in "the nature of the *adjudicative function*," and its application requires a "distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Forrester v. White*, 484 U.S. 219, 226-27 (1988) (emphasis added). "[A] judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Administrative decisions, even though

15

they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts" in the judicial immunity analysis. *Forrester*, 484 U.S. at 228. And any "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Clerk Forman, of course, is not a judge. Further, her MTD does not even attempt to provide any justification for treating the provision of access to newly filed complaints as an *adjudicative function* subject to judicial immunity. In fact, the MTD fails to cite to a single case for the proposition that a Clerk of Court overseeing public access to newly filed complaints is performing a judicial or quasi-judicial function. Nor does the MTD explain how Clerk Forman's actions here qualify as judicial actions, as opposed to administrative functions. By contrast, the Complaint repeatedly alleges facts showing that providing public access to court records is merely an administrative function. *See* Complaint ¶¶ 15-16, 19, 49, 53, 55, 57. Just as critically, as the Florida Supreme Court has explained, "[t]he settled law in respect to [clerks of court] is that the making or keeping of court records is a *purely ministerial duty*." *State ex rel. Druissi v. Almand*, 75 So. 2d 905, 906 (Fla. 1954) (emphasis added).

The one case cited by Clerk Forman, *Parker v. Butterfield*, considered whether a Clerk of Court had judicial immunity for acts that were undeniably judicial

in nature.  In that case, the plaintiff, a convicted felon proceeding *pro se*, brought a Section 1983 action against a Florida Circuit Court Judge and the Polk County Clerk of Court.  *See Butterfield*, No. 8:18-cv-175-30CPT, 2018 WL 6069657, at *1 (M.D. Fla. Nov. 1, 2018).  The plaintiff alleged that:

> Judge Raiden 'coax[ed] the Clerks' to take illegal action against him at the time Plaintiff was a defendant in a criminal proceeding. He asserts in this regard that Judge Raiden and Clerk Butterfield 'altered public records to commence usual punishment that set [him] up for failure within the Criminal Division by willfully [placing him] as a falsely convicted Felon' and by 'willfully failing to fix the altered record.'

*Id.* (internal citations omitted).

Inasmuch as the allegations in *Butterfield* make sense at all, they charge the Circuit Court Judge and the Clerk with taking improper actions directly impacting the plaintiff's *criminal prosecution and sentencing* in Polk County.  Such actions plainly fall within the scope of the adjudicative – as opposed to administrative – functions of the Court.  Of course, judges, not administrators, pronounce criminal sentences for defendants, issue orders, and determine what matters are properly in the record for consideration during the criminal proceedings.  According to the Florida Supreme Court:

> If the affected party is entitled by law to the essentially judicial procedures of notice and hearing, and to have the action taken based upon the showing made at the hearing, the activity is judicial in nature. If such activity occurs other than in a court of law, we refer to it as quasi-judicial.

*Modlin v. City of Miami Beach*, 201 So. 2d 70, 74 (Fla. 1967).  Thus, the alleged actions undertaken in *Butterfield* properly constituted judicial conduct protected by judicial immunity.  In contrast, managing the process by which already filed civil complaints are made accessible to the public does not involve "notice and a hearing" or action taken "based upon the showing made at the hearing." *Id.* at 74.  As such, it is an administrative function, not a judicial or quasi-judicial one. *See also Wolfe v. Strankman*, 392 F.3d 358, 365 (9th Cir. 2004) (dismissing 1983 claim against chief justice of California Supreme Court because "whether judges are proper defendants in a § 1983 action depends on whether they are acting as adjudicators or as 'administrators, enforcers, or advocates'").

Administering a public website like www.browardclerk.org also is not a judicial act, whether undertaken by a judge, a court clerk, or a court administrator.  Nor is directing staff to process filings before making them public.  Such activities do not implicate "the 'touchstone' for the…applicability [of judicial immunity]: 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'" *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993).  Since Clerk Forman's duty to maintain court records is purely ministerial, *see Druissi*, 75 So. 2d at 906, judicial immunity provides no basis for dismissal.

**IV.   CNS Has Not Failed To Join An Indispensable Party.**

Next, under Rule 12(b)(7), Clerk Forman argues CNS has failed to join two indispensable parties: the Clerk of the Florida Supreme Court (the "FSC Clerk") and the Florida Association of Court Clerks, Inc. (the "Association").  *See* MTD at 20-21.  Clerk Forman is mistaken.

Rule 19 governs whether a party is necessary and/or indispensable.  Under Rule 19(a), a party is "necessary" in two situations. First, a party is "necessary" when "the court cannot accord complete relief among the existing parties" in that person's absence.  Fed. R. Civ. P. 19(a)(2)(A).  Second, a party may also be "necessary" where "that [party] claims an interest relating to the subject of the action" and is so situated that disposing of the matter without that party may "impair or impede the party's ability to protect the interest" or "leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  *Id.* at 19(a)(1)(B).  If a party is necessary but joining that party would deprive the Court of subject matter jurisdiction, then the Court must determine whether that party's involvement is "indispensable" to the action.  *See* Fed. R. Civ. P. 19(b).  Dismissal of an action is required only if a non-joined party is both "necessary" and "indispensable." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968).  Otherwise, "if a person has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P.

19(a)(2). The burden of proof regarding whether a party should be joined rests on the party raising the defense.  *State Farm Mut. Auto. Ins. Co. v Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1331 (S.D. Fla. 2017).

### A.   Neither The FSC Clerk Nor The Association Is A Necessary Party.

#### 1.   The Court Can Provide Complete Relief Without Joining The FSC Clerk.

Clerk Forman appears to argue that complete relief cannot be afforded in the absence of the FSC Clerk because of the terms of the Interlocal Agreement.  MTD at 20.  The Interlocal Agreement provides that the FSC Clerk "must vote in the affirmative" in order for certain actions of the Authority "to be valid and become effective."  MTD Ex. 1, § 3.4.)  In particular, the FSC Clerk must vote in the affirmative when the performance of the "*Court-related* functions" of the Portal "may be *materially and adversely* impacted by a project, action or matter within the authority of the Authority."  MTD Ex. 1 § 3.4.b (emphasis added).  Without expressly saying so, Clerk Forman appears to contend that (1) the relief CNS seeks would "materially *and* adversely" impact the "Court-related functions" of the Portal, so that (2) the FSC Clerk would have to vote "yes" for such relief to become effective, but (3) the FSC Clerk cannot be compelled to vote in the affirmative because he is not a party.  Accordingly, Clerk Forman appears to contend that this Court cannot provide complete relief unless the FSC Clerk is sued.

20

This argument is wrong for several reasons.  First, nothing in the Complaint – and certainly nothing in the MTD – demonstrates that the relief CNS seeks would "materially *and* adversely" impact the "*Court-related* functions" of the Portal.  In fact, enjoining the Defendants from withholding public access to new complaints will not impact "Court-related functions" at all because it will not change how such complaints are routed to circuit court judges, clerks, or litigants.  In other words, access will have no impact on the operation of the courts themselves.  Nor will righting unconstitutional wrongs "materially" impact court-related functions.  That is the equivalent of saying PACER's public access function materially impacts the ability of the federal courts to administer justice.  In fact, the Complaint even alleges that the Portal software was written by the same vendor who wrote the software for Arizona's e-filing system, which "provides a public review queue for new complaints, automatically accessible on their receipt and prior to the completion of clerical processing" and that, upon information and belief, the same application is available to Defendants.  Complaint ¶ 6.  Thus, the Complaint alleges that CNS's requested remedies would not materially impact court-related functions.

Moreover, the FSC Clerk's vote is not needed because the relief CNS seeks does not "adversely" impact the court-related functions of the Portal.  To the contrary, the Complaint establishes that the current manner in which the Portal is operated with respect to public access is *unconstitutional*.  The remedy sought by

CNS will not *adversely* impact the court-related functions of the Portal, but instead will beneficially impact the administrative, public-access functions of the Portal by bringing them into compliance with the First Amendment.  Clerk Forman and the other Defendants can and must comply with the law, and such compliance is not dependent on the affirmative vote of the FSC Clerk.  This Court can render complete relief among the existing parties without joining the FSC Clerk.

> **2.    The Court Can Provide Complete Relief Without Joining The Association.**

Complete relief likewise can be provided without joining the Association. Clerk Forman argues, in essence, that the Association is necessary because it has a contractual agreement with the Authority under which the Association provides services related to developing, operating, and supporting the Portal.  *See* MTD at 21. In other words, the Association acts as a contractor to the Authority.

Clerk Forman's theory about the necessity for joining the Association as a party appears to go something like this: If the Authority requests services outside the scope of the Agreement, those services will be provided "under terms and conditions agreed upon at the time of requesting such services and shall be documented in a separate agreement or amendment to this Agreement."   MTD at 21 (quoting Agreement ¶ 4(b)).  In Clerk Forman's view, any changes or improvements to the Portal cannot be accomplished unless the Authority negotiates and contracts with

the Association for those changes.  Thus, she concludes, complete relief cannot be

provided in this action without joining the Authority's contractor, the Association.

In effect, Clerk Forman is claiming that this Court cannot enter an injunction

directing a Defendant to take a particular action unless every vendor, independent

contractor, or anyone else who might provide services necessary for the Defendant

to comply with the injunction is joined as a party to the action. Not surprisingly,

Clerk Forman cites no case law supporting this novel argument.  Indeed, she cites

no case law whatsoever in support of her argument about the Association.

In reality, the Association is not a necessary party.  The equitable relief CNS

seeks is an injunction prohibiting Defendants "from continuing their policies and

practices that deny Courthouse News access to new non-confidential circuit court

civil complaints while they sit in work queues and until after completion of clerical

processing."  Complaint at 29, Prayer ¶ 2.  Thus, technological changes to the Portal

are not necessarily a component of injunctive relief here.  But even if an injunction

resulted in technological changes to the Portal or its software, the Agreement permits

the Authority to implement such changes *without needing the approval or*

*cooperation of the Association*.  This is because the Agreement makes the Authority

– not the Association – the *sole owner* of the Portal software and designs in Florida.

*See* MTD, Agreement at ¶ 8.  Whatever position the Association might take on a

request from the Authority, the Authority could utilize any vendor it wanted to

comply with an injunction remedying unconstitutional behavior.  Otherwise, court orders could be flouted at will by state actors claiming their vendors would not cooperate.

The Court can certainly afford complete relief among the existing parties without joining the Association.  Thus, the Association is not a necessary party.

### B.   Neither The FSC Clerk Nor The Association Claims An Interest Relating To The Subject Of This Action.

The FSC Clerk and the Association also are not necessary parties to this action under Rule 19(a)(1)(B), which provides that a person is a necessary party if, among other things, "that person *claims an interest* relating to the subject of the action." (Emphasis added.)  Critically, "[a] prerequisite to the application of Rule 19(a)(1)(B) is that the absent party claim a legally protected interest in the subject matter of the ongoing suit."  *U.S. v. Janke*, No. 09-14044-CIV, 2009 WL 2525073, at *4 (S.D. Fla. Aug. 17, 2009).  Where the absent party does not make such a claim, he is not a necessary party.  *Id.*; *Perma-Liner Indus., LLC v. D'Hustler*, No. 8:21-cv-715-CEH-TGW, 2022 WL 772736, at *9 (M.D. Fla. Feb. 9, 2022) (same); *State Farm*, 278 F. Supp. 3d at 1332 ("Joinder pursuant to Rule 19 section (a)(1)(B)(i) is contingent…  upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action.") (internal quotation omitted); *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, No. 08-80897-Ryskamp/Vitunac, 2010 WL 11504833, at *2 (S.D. Fla. Jan. 7, 2010) (same).

Here, neither the FSC Clerk nor the Association has claimed any interest relating to the subject of this lawsuit.  Thus, they are not necessary parties under Rule 19(a)(1)(B).  *Janke*, 2009 WL 2525073, at *4; *Perma-Liner Indus.*, 2022 WL 772736, at *9; *State Farm*, 278 F. Supp. 3d at 1332; *W. Coast Life Ins.*, 2010 WL 11504833, at *2.

## V.    Abstention Is Not Warranted.

Clerk Forman's final argument is that the Court should abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).  *See* MTD at 21-26. This argument should be rejected for two primary reasons.  First, as a matter of law, *Younger* abstention does not apply here because there is no underlying, ongoing state proceeding.  Second, abstention is not appropriate where important First Amendment rights are at stake.

### A.    *Younger* Abstention Is Inapplicable.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule."  *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976).  In fact, "federal courts have a virtually unflagging obligation to exercise their jurisdiction" and will refrain from doing so only in "extraordinary circumstances." *Tokyo Gwinnett, LLC v. Gwinnett Cty., Ga.*, 940 F.3d 1254, 1267 (11th Cir. 2019) (internal quotations omitted).    Thus, in exceedingly rare instances, *Younger*

abstention may be appropriate.  But, as a matter of law, this action is not one of those rare instances.

*Younger* abstention promotes "a strong federal policy against federal-court interference **with pending state judicial proceedings** absent extraordinary circumstances." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (emphasis added). Thus, "*Younger* abstention applies **only** in three exceptional circumstances: (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Tokyo Gwinnett*, 940 F.3d at 1267 (emphasis added; internal quotations omitted).

Here, none of these circumstances exist because there are no ongoing state court criminal or civil proceedings that this Court is being asked to intervene in, and Clerk Forman does not even attempt to claim that there are.  She also fails to mention the Supreme Court's decision in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013), which made clear that *Younger* abstention is never available unless one of the three listed types of criminal or civil proceeding is ongoing: "We have not applied *Younger* outside these three 'exceptional' categories, and today hold . . . that they define *Younger*'s scope." *Sprint Commc'ns*, 571 U.S. at 78; *see also Major*

*League Baseball v. Butterworth*, 181 F. Supp. 2d 1316, 1320-21 (N.D. Fla. 2001) (rejecting *Younger* abstention argument where "no state criminal or civil proceeding [was] pending," despite the fact that the Florida Attorney General had issued investigative demands to plaintiffs prior to their filing their case in federal court). Thus, as a matter of law, *Younger* abstention is not available here.

Faced with this problem, Clerk Forman first attempts to align this case with two other Supreme Court cases that are, in reality, nothing like this one.  First, she cites *O'Shea v. Littleton*, 414 U.S. 488 (1974), in which the Supreme Court explained that abstention is designed to prevent the "kind of interference that *Younger* . . . sought to prevent," that is, interference with the adjudication of the *merits* of state court cases.  *O'Shea*, 414 U.S. at 500.

In particular, *O'Shea* involved a class of African-American plaintiffs who sued various defendants, including a county magistrate and judge, for alleged racial discrimination and sought "an injunction aimed at controlling or preventing the occurrence of specific events that might take place *in the course of* future state criminal trials." *Id.* (emphasis added). The Seventh Circuit reversed the district court's dismissal of the case, but the Supreme Court reversed the Seventh Circuit because the relief sought by the plaintiffs "would contemplate interruption of state proceedings to adjudicate assertions of noncompliance," resulting in "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly

accomplish the kind of interference that *Younger* . . . and related cases sought to prevent," and "would require . . . continuous supervision by the federal court over the conduct of . . . future criminal . . . proceedings" via a contemplated "periodic reporting system." *Id*. at 500-01. While *Younger* counsels against interfering with the adjudication of pending state court proceedings, *O'Shea*'s focus was a concern about extensive and detailed interference with the adjudication of future proceedings on the merits, neither of which is present here.

Clerk Forman also relies upon *Rizzo v. Goode*, 423 U.S. 363 (1976), which extended "the principles" of *Younger* and *O'Shea* from the judicial to the executive branch, but was ***not*** an abstention case; rather, *Rizzo* applied those principles "to hold that an injunction requiring the Philadelphia police department to draft comprehensive internal procedures to address civilian complaints was ***beyond the "scope of federal equity power***." *CNS v. Planet*, 750 F.3d 776, 789 (9th Cir. 2014) ("*Planet I*") (quoting *Rizzo,* 423 U.S. at 378-80). The limited injunctive relief CNS seeks here – an order to cease denying access to complaints until after processing – does not come close to the sort of "significant[] revising [of] internal procedures" to structurally change the operation of a department which were held to exceed the scope of federal equity power in *Rizzo*, 423 U.S. at 379; *Planet I*, 750 F.3d at 978-92 & n.8; *Planet III*, 947 F.3d at 591 n.4.

Clerk Forman asks this Court to disregard controlling precedent from the Supreme Court and the Eleventh Circuit and, instead, to adopt the incorrect reasoning of the Seventh Circuit in *CNS v. Brown*, 908 F.3d 1063 (7th Cir. 2018) and the Eastern District of Missouri in *CNS v. Gilmer*, 543 F. Supp. 3d 759 (E.D. Mo. 2021), *appeal filed*, No. 21-2632 (8th Cir. July 23, 2021). *See* MTD at 24-25. As recently recognized by the District of Vermont, other courts "have not followed" *Brown* and *Gilmer*, and those decisions remain "outliers." *Gabel*, 2021 WL 5416650, at *11.

Moreover, the Seventh Circuit's *Brown* decision is patently wrong because, as the Supreme Court has said, "[a]bsent any *pending* proceeding in state tribunals, . . . application . . . of *Younger* abstention [is] clearly erroneous." *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (emphasis in original). For this reason, *Brown*'s reasoning has been rejected by several federal circuit and district courts in similar cases brought by CNS because the relief sought neither "presented a risk of an 'ongoing federal audit' of a state's judicial system nor amounted to 'a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state . . . proceedings." *Planet III*, 947 F.3d at 591 n.4; *see also CNS v. Schaeffer*, 429 F. Supp. 3d 196, 205-07 (E.D. Va. 2019) (rejecting as "inappropriate" Virginia clerks' abstention argument that "re[lied] heavily" on *Brown* because there was no ongoing state proceeding; the case did not "implicate matters 'uniquely in

furtherance of the state courts' ability to perform its judicial functions,'" and the relief sought by CNS would "not invade any state court proceedings, ongoing or future" or "require continuous federal policing"), *aff'd*, 2 F.4th 318, 325 n.2 (4th Cir. 2021) (rejecting *Brown* Court's abstention analysis); *CNS v. Omundson*, No. 1:21-cv-00305-DCN, 2022 WL 1125357, at *7-*8 (D. Idaho Apr. 14, 2022) (same); *CNS v. Price*, No. 1:20-cv-1260-LY, 2021 WL 5567748, at *6 (W.D. Tx. Nov. 29, 2021) (because there was no ongoing state proceeding, Clerk's reliance on *Younger* was "unavailing"); *Gabel*, 2021 WL 5416650, at *11; *N.M. Admin. Office*, 2021 WL 4710644, at *35-36 (same); *CNS v. Tingling*, 2016 WL 8739010, at *18 (S.D.N.Y. Dec. 16, 2016) (same).

The relief sought in this case is similar to *Planet III*, *Schaefer*, *Omundson*, *Price*, *Gabel*, *N.M. Admin. Office*, and *Tingling*; it presents no risk of an "ongoing federal audit" or a continuing intrusion into the daily conduct of state proceedings. And in each of those cases, after the orders issued in CNS's favor, the clerks provided timely access without any federal supervision, let alone a federal audit, and with no further court action.

The *Brown* Court itself acknowledged that none of the "principal categories of abstention" constituted a "perfect fit" and that it based its decision, instead, on "the more general principles of federalism." *Brown*, 908 F.3d at 1071. In doing so, *Brown* cited *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674 (7th Cir. 2010), which *Brown*

described as also "not being a typical *Younger* scenario." *Id.* at 1072-73.  But *SKS* was typical in the way that matters: it affirmed abstention under *Younger* where there *was* pending state court litigation, and thus adjudication in federal court while state court proceedings were pending would "run contrary to the 'vital' considerations of comity and federalism." *Dart*, 619 F.3d at 679.  The same is not true here.

Clerk Forman's reliance on *Gilmer*, which granted a motion to abstain largely in reliance on *Brown*, is equally misplaced.  *Gilmer* did not consider the factors required to abstain under *Younger* and failed to discuss Eighth Circuit case law holding that, after *Sprint Communications*, application of *Younger* is limited to where there is an "ongoing" state court proceeding, *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 610 (8th Cir. 2018), "judicial in nature," and which "fits within one of the three categories where [the *Sprint Communications* Court said] *Younger* abstention applies," *Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 552-53 (8th Cir. 2018), or where *O'Shea* applies because the relief requested would unduly interfere with future state judicial proceedings. *Oglala Sioux*, 904 F.3d at 611-12.

Accordingly, Clerk Forman's *Younger* abstention argument must be rejected by this Court.

**B.    Abstention In Not Appropriate In Cases Involving First Amendment Rights.**

Abstention also is not proper here because the Supreme Court and Eleventh Circuit have repeatedly held that abstention is particularly inappropriate when First

Amendment rights are threatened. *See, e.g.*, *Baggett v. Bullit*, 377 U.S. 360, 379 (1964) (declining abstention and noting that delays caused by abstention are "quite costly where the vagueness of a statute may inhibit the exercise of First Amendment freedoms"); *City of Houston, Tex. v. Hill*, 482 U.S. 451, 467–68 (1987) (same); *Cate v. Oldham*, 707 F.2d 1176, 1184–85 (11th Cir. 1983) (declining to abstain and noting "[a]bstention is to be invoked particularly sparingly in actions involving alleged deprivations of First Amendment rights"); *Pittman v. Cole*, 267 F.3d 1269, 1287 (11th Cir. 2001) (same).  And as the Ninth Circuit explained in *Planet*, cases which present "fundamental First Amendment interests" should "be adjudicated on the merits in federal court, where they belong."  *Planet I*, 750 F.3d at 787, 793 (citing *Hartford Courant v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004)).

Likewise, this Court has repeatedly declined to abstain in cases involving a threat to First Amendment rights, particularly because the delay caused by abstention "might itself effect the impermissible chilling of the very constitutional right [plaintiff] seeks to protect." *See Dream Defenders v. DeSantis*, No. 4:21-cv-191-MW/MAF, 2021 WL 4099437, at *15 (N.D. Fla. Sept. 9, 2021) (Walker, J.) (denying motion to abstain where the anti-riot statute in question implicated free expression rights protected under the First Amendment); *see also Attwood v. Clemons*, 526 F. Supp. 3d 1152, 1174 (N.D. Fla. 2021) (declining to abstain in case involving state freedom of expression laws akin to the First Amendment); *League of*

*Women Voters of Fla., Inc. v. Detzner*, 354 F. Supp. 3d 1280, 1283 (N.D. Fla. 2018) (same); *Fla. Ass'n of Prof. Lobbyists v. Div. of Legisl. Info. Servs.*, No. 4:06-cv-123-SPM/WCS, 2006 WL 8443465, at *4 (N.D. Fla. Apr. 25, 2006) (same).

Here, the critical First Amendment right of access to civil complaints is at issue. Any further delay caused by abstention would prolong adjudication of these important issues. For this additional reason, the Court should refuse to abstain.

## CONCLUSION

Courthouse News Service respectfully requests that the Court enter an order: (1) denying Clerk Forman's Motion to Dismiss on all requested grounds; and (2) requiring Clerk Forman to file and serve an answer to CNS's Complaint within fourteen (14) days from entry of such order denying her requested relief.

Dated: April 26, 2022

Respectfully submitted,

THOMAS & LOCICERO PL

/s/ *Carol Jean LoCicero*
Carol Jean LoCicero (FBN 603030)
Mark Caramanica (FBN 110581)
601 South Boulevard
Tampa, FL  33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
clocicero@tlolawfirm.com
mcaramanica@tlolawfirm.com
tgilley@tlolawfirm.com

Daniela B. Abratt (FBN 118053)
915 Middle River Drive, Suite 309
Fort Lauderdale, FL  33304
Telephone: (954) 703-3418
Facsimile: (954) 400-5415
dabratt@tlolawfirm.com
bbrennan@tlolawfirm.com

-and-

Jonathan E. Ginsberg (appearing *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, NY  10104
Telephone: (212) 541-1130
jon.ginsberg@bclplaw.com
dortiz@bclplaw.com

*Attorneys for Plaintiff Courthouse News*
 *Service*

## LOCAL RULE 7.1(F) CERTIFICATE OF COMPLIANCE

I hereby certify that this motion and memorandum of law contains 7,904 words, with such word count incorporating all portions of this document subject to the word limitations imposed under Local Rule 7.1(F).

 */s/ Carol Jean LoCicero*
Carol Jean LoCicero

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2022, a true and correct copy of the foregoing document is being electronically filed and will be furnished via CM/ECF and via electronic mail to:

Sidney C. Calloway
Amy Wessel Jones
SHUTTS & BOWEN LLP
200 East Broward Blvd., Ste. 2100
Fort Lauderdale, FL 33301
scalloway@shutts.com
jgoodwin@shutts.com
ajones@shutts.com
ehumaran@shutts.com

*Counsel for Defendant Brenda D. Forman*

Gregory T. Stewart
Lynn M. Hoshihara
Elizabeth Desloge Ellis
Kirsten H. Mood
NABORS, GIBLIN & NICKERSON, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, FL 32308
gstewart@ngnlaw.com
lhoshihara@ngnlaw.com
eellis@ngnlaw.com
kmood@ngnlaw.com
legal-admin@ngnlaw.com

*Counsel for Defendants Florida*
*E-Filing Authority and Karen E. Rushing*

/s/ *Carol Jean LoCicero*
Carol Jean LoCicero