## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**COURTHOUSE NEWS SERVICE,**

    *Plaintiff,*

v.                         **Case No.: 4:22cv106-MW/MAF**

**BRENDA D. FORMAN,**
**et al.,**

    *Defendants.*

_____/

## <u>ORDER ON MOTIONS TO DISMISS</u>

Plaintiff brings this First Amendment case against Brenda Forman in her official capacity as the Broward County Clerk, the Florida E-Filing Authority, and Karen Rushing in her official capacity as chair of the E-Filing Authority. Now, Defendants Rushing and Forman move to dismiss Plaintiff's claims. ECF No. 24; ECF No. 26. Defendant Rushing argues that Plaintiff's claim against her duplicates its claim against the E-Filing Authority and is thus redundant. Defendant Forman argues (1) that Plaintiff's claim against her does not comport with *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), (2) that section 1983 bars injunctive relief against her, (3) that Plaintiff failed to join indispensable parties, and (4) that this Court must abstain from resolving Plaintiff's

claim. For the reasons set out below, Defendant Rushing's motion is **GRANTED in part** and **DENIED in part** and Defendant Forman's motion is **DENIED**.

I

The relevant facts as alleged by Plaintiff, which this Court accepts as true, are as follows. Plaintiff is a nationwide news service that covers civil litigation in state and federal courts. ECF No. 1 ¶ 28. Plaintiff's Florida reporters cover every state circuit court, "including Broward County's Seventeenth Judicial Circuit." *Id.* ¶¶ 33–34.

The Florida E-Filing Authority—created by agreement between all circuit court clerks and the clerk of the Florida Supreme Court—owns and governs Florida's e-filing portal. *Id.* ¶¶ 17, 47. E-filing through the portal is largely mandatory. *Id.* Defendant Rushing is the Authority's chair. *Id.* ¶ 18.

Defendant Forman "is the elected Broward County Clerk of Courts." *Id.* ¶ 15. As the clerk of courts, Defendant Forman administers "public access to court records, including new non-confidential Seventeenth Judicial Circuit of Florida civil complaints." *Id.*

To find newsworthy cases, Plaintiff's reporters scour newly filed complaints. *Id.* ¶ 39. A delay in Plaintiff's ability "to obtain and review new complaints necessarily creates a delay in its ability to inform subscribers and the public" about the complaints. *Id.* ¶ 40. And "[t]he newsworthiness of a new filing quickly declines

with time." *Id.* ¶ 70. Historically, Plaintiff's reporters reviewed new civil complaints in person the day they were filed and before they were docketed. *Id.* ¶ 41.

But in Broward County, "access delays . . . have been a chronic problem." *Id.* ¶ 53. "Most new complaints" are "withheld from public view for at least one day and often longer." *Id.* This is because Broward County has a policy of "withholding public access to complaints until clerical processing is completed." *Id.* ¶ 57. From a technical standpoint, providing same-day access to civil complaints would be easy. *Id.* ¶ 64. Despite multiple entreaties, however, Defendants have refused to act to reduce delays. *Id.* ¶¶ 65–69. Unable to reach an agreement with Defendants, Plaintiff filed this suit, alleging that Defendants are violating its First Amendment right of access to public court records by withholding civil complaints from public view until after clerical processing is completed. *Id.* ¶ 75 .

With these factual allegations in mind, this Court addresses each motion to dismiss in turn.

II

A

First, Defendant Rushing moves to dismiss Plaintiff's "official capacity" suit against her as redundant. ECF No. 24. Because Plaintiff can sue local government entities like the E-Filing Authority, Defendant Rushing argues, Plaintiff need not bring an official capacity action against her. *See Busby v. City of Orlando*, 931 F.2d

764, 776 (11th Cir. 1991) (explaining that "there no longer exists a need to bring official-capacity actions against local government officials").

Plaintiff retorts that "Clerk Rushing has been sued in in this action because of her unique role in governance over the Portal." ECF No. 41 at 3. As chair, Defendant Rushing "has significant power and authority to act on behalf of the Authority." *Id.* Thus, says Plaintiff, all Defendants—including Defendant Rushing—"are indispensable." *Id.* at 4.

Plaintiff further argues that section 1983 suits for prospective relief are properly brought against "individuals sued in their official capacity." *Id.* at 5 (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). Plus, Plaintiff argues, the authority Defendant Rushing cites "does not specifically forbid suing officials in their official capacity in all circumstances when the government entity is also sued." *Id.* at 6.

Plaintiff misses the point; either the E-filing Authority or Defendant Rushing is the proper party, but it cannot be both. If the E-Filing Authority is a local government entity, Plaintiff should sue it directly. On the other hand, if the E-filing Authority is a state agency, Plaintiff *cannot* sue it, and must sue Defendant Rushing instead. Thus, to determine the proper party, this Court must decide whether the E-Filing Authority is a local or state entity. To do so, this Court begins by briefly describing the E-Filing Authority and its genesis.

B

In 2009, the Florida Legislature asked "the [Florida] Supreme Court [to] set statewide standards for electronic filing," Ch. 2009-61, § 16, Laws of Fla., which the court then issued, *see* Administrative Order No. AOSC09-30. The next year, the various Florida clerks of court and the clerk of the Florida Supreme Court entered into an interlocal agreement under section 163.01, Florida Statutes, to create the Florida E-Filing Authority. ECF No. 41-1 at 3 (recognizing "the Legislative directive and recognition by the Florida Supreme Court of a need to develop and implement a system for statewide electronic filing"). Under the agreement, the Authority "exercise[s] exclusive jurisdiction, control and supervision over the E-Filing Court Records Portal and . . . make[s] and enforce[s] . . . rules and regulations for the maintenance, management, upgrade and operation of the E-Filing Court Records Portal." *Id.* at 11.

In short, the E-Filing Authority is an independent entity tasked with operating Florida's e-filing system that was created by agreement between the circuit clerks of court and the clerk of the Florida Supreme Court.

C

To distinguish between local and state entities, this Court typically considers (1) how state law defines an entity, (2) what degree of control the state maintains over the entity, (3) the source of the entity's funds, and (4) who bears financial

responsibility for judgments entered against the entity. *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003).

But this Court need not take that detour here. Applying *Manders*, several courts have determined that Florida circuit court clerks are arms of the state. *See, e.g.*, *Pasek v. Kinzel*, --- F. Supp. 3d ---, No. 2:21-CV-20-JLB-NPM, 2021 WL 4806562, at *6–8 (M.D. Fla. Oct. 14, 2021). Indeed, in its response to Defendant Forman's motion to dismiss, Plaintiff expressly argues that circuit court clerks are *state* actors. ECF No. 42 at 22. And, without question, the clerk of the Florida Supreme Court is an arm of the state as well. So the E-Filing Authority is an entity with statewide authority created by an agreement solely between arms of the state. This Court can scarcely imagine any cogent theory that would transform such an entity into a municipal entity for Eleventh Amendment purposes. In short, the E-Filing Authority is an arm of the state.

The upshot is that Plaintiff cannot sue the E-Filing Authority. *See Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) ("Pursuant to the Eleventh Amendment, a state may not be sued in federal court unless it waives its sovereign immunity or its immunity is abrogated by an act of Congress . . . ."). On the other hand, when a plaintiff seeks only injunctive relief, "[a] state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law or laws at issue in the suit." *Id.* at 1319.

Defendant Rushing fits the bill. As the E-Filing Authority's chair, Defendant Rushing "shall take all such actions, have all such powers and sign all documents on behalf of the Authority in furtherance of the purposes of [the] Interlocal Agreement." ECF No. 41-1 at 10. In turn, as noted above, the Authority "exercise[s] exclusive jurisdiction, control and supervision over the E-Filing Court Records Portal and . . . make[s] and enforce[s] . . . rules and regulations for the maintenance, management, upgrade and operation of the E-Filing Court Records Portal." *Id.* at 11. Defendant Rushing is a proper Defendant.

*      *      *

Because Plaintiff cannot sue the E-Filing Authority, but may sue Defendant Rushing, Defendant Rushing's motion is **GRANTED in part** and **DENIED in part**. Plaintiff's claim against the E-Filing Authority is dismissed.

III

Next, this Court turns to Defendant Forman's motion to dismiss, starting with her argument that Plaintiff has failed to state a claim.

A

Defendant Forman argues that Plaintiff's complaint fails to state a claim for two reasons. First, Defendant Forman argues that Plaintiff failed to adequately plead a claim under *Monell*. ECF No. 26 at 11–19. Second, Defendant Forman argues that she is a "judicial officer," thus, under section 1983, Plaintiff cannot seek injunctive

relief for acts taken in Forman's "judicial capacity" because Plaintiff has not alleged that "a declaratory decree was violated or declaratory relief was unavailable." ECF No. 26 at 19–20. This Court addresses each argument in turn.

1

First, Defendant Forman argues that this Court should dismiss Plaintiff's complaint because Plaintiff failed to plausibly allege each element of its *Monell* claim. ECF No. 26 at 11. Specifically, Defendant Forman argues that, as an arm of the state, she is not a proper *Monell* defendant, *id.* at 12–13, and that Plaintiff has failed to demonstrate that the lack of a public review queue was the "moving force" behind the violation of Plaintiff's federal rights, *id.* at 14–19. Defendant Forman notes that while Plaintiff did "not expressly reference" *Monell*, "it appears [Plaintiff] is attempting to plead such a claim." *Id.* Plaintiff, dismissing this argument as a strawman, responds that it did not plead a *Monell* claim and nonetheless alleged an actionable claim under section 1983 against Defendant Forman. ECF No. 42 at 5–15.

Plaintiff, through section 1983, alleges that Defendant Forman, in her official capacity acting "under color of state law," violated Plaintiff's First Amendment right of access to public court records by withholding such documents from public view until after clerical processing is completed. ECF No. 1 ¶ 75. Plaintiff seeks

8

prospective declaratory and injunctive relief to remedy this alleged constitutional deprivation. *Id.* ¶ 78.

This is not a *Monell* claim. Section 1983 authorizes suit "against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution.' " *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (quoting 42 U.S.C. § 1983). The Supreme Court made plain in *Monell* that "municipalities and other local government units" are "persons" under section 1983, thus a municipality can be liable "under § 1983 for monetary, declaratory, or injunctive relief" when its "official policy or custom" is the "moving force" of a constitutional violation. 436 U.S. at 690, 694.

Then, in *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Court clarified that *Monell* extends only "to local government units which are not considered part of the State," and does not apply to "States or governmental entities that are considered 'arms of the State.' " *Id.* at 70 (quoting *Monell*, 436 U.S. at 690 n.54). Indeed, because "States are protected by the Eleventh Amendment while municipalities are not," the Court held that, generally, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 70–71. On the other hand, the Court noted that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-

capacity actions for prospective relief are not treated as actions against the State.' " *Id.* at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). This follows from the Eleventh Amendment exception carved out in *Ex parte Young*, 209 U.S. 123 (1908). *See also Grizzle*, 634 F.3d at 1319 ("Under the doctrine enunciated in *Ex Parte Young*, however, a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." (citation omitted)).

As alluded to above, Defendant Forman, as the Broward County Clerk of Courts, is an "arm of the State," not a municipal or local official. Thus, Defendant Forman is correct—she is not a proper *Monell* defendant. Because Defendant Forman is a state official, Plaintiff cannot and does not raise a *Monell* claim against her. Against Defendant Forman's suggestion, however, Plaintiff's failure to state a *Monell* claim does not warrant dismissing the complaint, nor is it necessarily tantamount to failing to state a claim under section 1983. Rather, because Plaintiff seeks only prospective relief, it can assert a claim against Defendant Forman in her official capacity as a state official under section 1983 and *Ex parte Young*. *See Will*, 491 U.S. at 71 n.10. And while Defendant Forman does not argue that Plaintiff failed to state a claim under *Ex parte Young*, this Court finds that Plaintiff has plausibly alleged this claim.

10

To determine whether *Ex parte Young* permits a suit against a state official, this Court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020) (alteration in original) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Moreover, unlike under the *Monell* test, "the constitutional deprivation need not be pursuant to the enforcement of a state law or policy; any act by a state official—as long as it is performed under color of state law—is sufficient." *Id.* at 868.

Here, Plaintiff alleges that Defendant Forman has violated—and continues to violate—its First Amendment right of access to non-confidential civil complaints by delaying and withholding access to such documents until clerical processing is completed. ECF No. 1 ¶¶ 7–10, 15–16, 75–78. Additionally, Plaintiff alleges that Defendant Forman has withheld its access to newly-filed complaints under color of state law. *Id.* ¶¶ 20, 75. To remedy this alleged constitutional violation, Plaintiff "seeks prospective injunctive and declaratory relief." *Id.* ¶ 21.

The Eleventh Circuit has not yet recognized a First Amendment right of access to civil complaints. *Cf. FTC v. Abbvie Prods. LLC*, 713 F.3d 54, 62–63 (11th Cir. 2013) (recognizing common law right of access to "a complaint as a judicial record"); *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310–11

11

(11th Cir. 2001) (recognizing "constitutional right of access to include civil actions pertaining to the release or incarceration of prisoners and their confinement" and common-law right of access to "inspect and copy public records and documents"). Because Defendant Forman does not challenge this alleged constitutional right's existence, this Court declines to pass on the matter at this juncture.[1] Additionally, Plaintiff only seeks prospective relief and has alleged that Defendant Forman has violated its First Amendment rights through action under color of state law. Plaintiff has therefore plausibly stated a claim under section 1983 and *Ex parte Young*.

2

Next, Defendant Forman points out that section 1983's "plain language . . . prohibits injunctive relief against judicial officers for acts or omissions made in their judicial capacity" unless the officer has violated a declaratory decree or declaratory relief is unavailable. ECF No. 26 at 19. This case implicates neither exception. Thus, Defendant Forman says, because she is judicial officer, Plaintiff cannot obtain an injunction against her.

The language that Defendant Forman relies on comes from the Federal Courts Improvement Act (FCIA), Pub. L. No. 104-317, 110 Stat. 3847 (1996), which

---

[1] It is worth noting, however, that courts across the country have recognized this First Amendment right. *See, e.g.*, *Courthouse News Serv. v. Quinlan*, No. 21-1624, 2022 WL 1210554, at *3 (1st Cir. Apr. 25, 2022); *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1069–70 (7th Cir. 2018); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 788 (9th Cir. 2014); *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 555–59 (E.D. Va. 2020).

amended section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Defendant Forman's argument fails, however, because she is not a judicial officer under the statute, and because docketing complaints is not a judicial function.

a

First, the FCIA's language and legislative history suggest that "judicial officer," as used in the statute, refers only to judges. Starting with the text, the FCIA's language could be read to either include or exclude quasi-judicial officers. For example, a roughly contemporaneous edition of Black's Law Dictionary defines judicial officer as "[a] judge or magistrate" or, alternatively, as "[a]ny officer of the court, such as a bailiff or court reporter." *Judicial Officer*, *Black's Law Dictionary* (7th ed. 1999). When, as here, "a statute is vague or ambiguous, other interpretative tools may be used, including an examination of the act's . . . legislative history." *See United States v. Pringle*, 350 F.3d 1172, 1180 n.11 (11th Cir. 2003). Thus, this Court turns to the FCIA's history.

Through the FCIA, Congress amended section 1983 to "bar a Federal judge from granting injunctive relief against a State judge, unless declaratory relief is unavailable or the State judge violated a declaratory decree." S. Rep. 104-366, at 37

(1996); *see also id.* (parenthetically defining "judicial officers" as "justices, judges, and magistrates"). Based on this history, the Second Circuit has questioned whether the FCIA's bar on "granting . . . injunctive relief against 'judicial officers' was meant to extend to other officials whose entitlement to absolute immunity from damages had been recognized in light of their roles in judicial proceedings." *Hili v. Sciarrotta*, 140 F.3d 210, 215 (2d Cir. 1998).

But the most exhaustive analysis comes from the Court of Appeals of Minnesota. In *Simmons v. Fabian*, it explained (a) that traditionally, immunity from damages did not include immunity from injunctive relief, (b) that Congress expressed no intent to extend immunity from injunctive relief to quasi-judicial officials through the FCIA, and (c) that "the availability of injunctive relief against quasi-judicial officials, despite absolute immunity from damages, is so well established that . . . Congress would have expressly abrogated the availability of injunctive relief against quasi-judicial officials had it intended to do so." 743 N.W.2d 281, 294 (Minn. Ct. App. 2007). While *Simmons* is non-binding, this Court finds its thorough and scholarly discussion of the FCIA's history highly persuasive.

To be sure, most courts have held—contra *Simmons*—that "[t]here is . . . no reason to believe that the Federal Courts Improvement Act of 1996 is restricted to 'judges.' " *Roth v. King*, 449 F.3d 1272, 1287 (D.C. Cir. 2006); *see also Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (applying the FCIA to parole board

officials); *Daker v. Keaton*, No. 20-10798, 2021 WL 3556921 (11th Cir. 2021) (applying the FCIA's injunctive relief limitation to a claim against Georgia court clerks). But these cases offer little reasoning to support their conclusion—usually presuming without analysis that the FCIA applies to quasi-judicial officials. Thus, this Court does not find them persuasive.

In short, courts "have been quite sparing in" recognizing "absolute immunity and have refused to extend it any further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991) (quotations and citations omitted). That, combined with the Supreme Court's admonition that section 1983 is "to be broadly construed, against all forms of official violation of federally protected rights," counsels against extending the FCIA beyond what its text and legislative history would suggest. *Monell*, 436 U.S. at 660. Thus, this Court finds that "judicial officers," as used in section 1983, refers only to judges.

b

This Court could stop there, but Defendant's argument to the contrary is strong and supported by many (non-binding) cases. Accordingly, this Court also considers whether implementing a policy governing docketing civil complaints, the function at issue here, is an action taken in a "judicial capacity." It is not.

Returning to the FCIA's legislative history, Congress intended to overturn *Pulliam v. Allen*, 466 U.S. 522 (1984), in which the Supreme Court held that judicial

immunity did not bar prospective relief against a Virginia state court judge sued under section 1983. *Id.* at 541; *see* S. Rep. 104-366, at 36 (1996) (discussing *Pulliam*); *see also id.* at 37 (explaining that "burdensome litigation creates a chilling effect that threatens judicial independence and may impair the day-to-day decisions of the judiciary in close or controversial cases"). Nothing in this legislative history suggests that Congress intended the "judicial capacity" to encompass docketing complaints.

The "functional approach" test—used by courts in similar cases—buttresses this conclusion. Courts use the " 'functional' approach" to determine whether an act is "judicial" because judicial "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 224, 227 (1988); *see also Stevens v. Osuna*, 877 F.3d 1293, 1305 (11th Cir. 2017). "In determining whether a judge's [or clerk's] act is judicial for purposes of immunity, this Court must consider (1) whether the act is one normally performed by judges, and (2) whether the complaining party was dealing with the judge in his judicial capacity." *Osuna*, 877 F.3d at 1304 (quotations omitted). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature," *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009), while "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts," *Forrester*, 484 U.S. at 228.

16

To be sure, Defendant Forman cites a host of cases finding that filing papers *is* a judicial function. But those cases are inapposite because they involved filing papers in a particular case. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 525–26 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *Smith v. Erickson*, 884 F.2d 1108, 1111 (8th Cir. 1989); *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987); *McCarthy v. Davis*, No. 11-15651, 2012 WL 1570858, at *4 (E.D. Mich. May 3, 2012); *Pikulin v. Gonzales*, No. 07-CV-0412 CBA, 2007 WL 1063353, at *1 (E.D.N.Y. Apr. 5, 2007). But Plaintiff's claim is different; Plaintiff challenges Broward County's *policy* of not making civil complaints available to the public until clerical processing is complete. ECF No. 1 ¶ 19. Deciding whether complaints are docketed before or after processing is not a task normally performed by judges. Rather, it is an administrative decision, which is not a judicial act. *See Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989) (finding that orders "instruct[ing] court personnel on how to process the petitions made to the court" are not judicial acts). Put simply, deciding when, as a matter of course, non-confidential civil complaints become available to the public is not an exercise of judicial power.

Second, all of the cases Defendant Forman cites address immunity from damages. And "immunity from damages does not ordinarily bar equitable relief as well." *Wood v. Strickland*, 420 U.S. 308, 314 (1975). Defendant Forman provides no

reason to assume that any damages immunity that might extend to her is conterminous with her immunity from suit for injunctive relief.[2] In sum, judicial immunity rests on the concern that, absent immunity "the independent and impartial exercise of judgement vital to the judiciary might be impaired." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993). But Defendant Forman's nondiscretionary duty to docket complaints does not require the exercise of independent judicial judgment. And so, it is not an act taken in a "judicial capacity."

In closing, this Court returns to the FCIA's text. The text does not grant absolute immunity to all court employees for any act in any way related to the courts. But combining, as Defendant Forman urges, sweeping definitions of "judicial officer" and "judicial capacity" would do just that. If Congress had intended that result, it surely would have said so. Without a clear statutory directive, this Court declines to insulate all court employees from all suits for injunctive relief. Thus, this Court finds that Defendant Forman is not immune from suit for injunctive relief under the FCIA.

B

Defendant Forman also moves to dismiss for failure to join required parties.

---

[2] As an arm of the state, Defendant Forman also has Eleventh Amendment immunity from suit for damages.

She argues that the clerk of the Florida Supreme Court is a required party because the clerk must approve E-Filing Authority actions that may "materially and adversely impact[]" court-related functions. ECF No. 26 at 20. Defendant Forman also argues that the Florida Association of Court Clerks, Inc. is a necessary party because a separate agreement between the Association and the E-Filing Authority is needed to add enhancements to Florida's e-filing software.

Plaintiff must join required parties so long as their joinder is feasible. Fed. R. Civ. P. 19. Under Rule 19, a party is required if (1) in the party's absence, the court cannot accord complete relief among the existing parties, or (2) the party has an interest in the current proceedings and disposing of the action in that party's absence may "impair or impede the person's ability to protect the interest," or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Id.*; *see also Laker Airways, Inc. v. British Airways*, 182 F.3d 843, 847 (11th Cir. 1999) (citation omitted).

If a required party is not joined, a defendant may move to dismiss the action under Rule 12(b)(7). In weighing a Rule 12(b)(7) motion, this Court "must assume the truth of the factual allegations in the complaint," but it "is not limited to the complaint, and the parties may present evidence outside the pleadings." *Muscogee (Creek) Nation v. Poarch Band of Creek Indians*, 525 F. Supp. 3d 1359, 1365 (M.D. Ala. 2021) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1359 (3d ed. 2020)). "That said, a complaint can only be dismissed for failure to join an indispensable party if the party cannot be joined." *Rook v. First Liberty Ins. Corp.*, No. 3:22cv1979-TKW/HTC, 2022 WL 794983, at *2 (N.D. Fla. Mar. 15, 2022) (citing *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th 2003)).

Defendant Forman's argument fails as to both the clerk of the Florida Supreme Court and the Association. Starting with the clerk of the Florida Supreme Court, Defendant argues that the clerk must agree to the changes Plaintiff seeks and that the clerk is therefore an indispensable party. To support this argument, Defendant Forman attaches documents showing "the great burden that changes to any rules or procedures governing access to public court records poses." ECF No. 44; *see also* ECF No. 44-5. But Defendant Forman's argument presupposes that the clerk of the Florida Supreme Court must sign off on the changes Plaintiff seeks. This Court is not convinced that is the case.

Relevant here, the clerk of the Florida Supreme Court must sign off "[w]henever the performance of the Court-related functions of the portal may be materially and adversely impacted by a project." ECF No. 41-1 at 9. Nothing before this Court suggests that providing prompt public access to civil complaints would materially and adversely impact court functions. Nor does anything suggest that such a change "may" materially and adversely impact court functions. Typically, though

not always, the word "might" implies that something is less likely, while "may" implies that something is more likely. *What is the Difference Between "May and "Might"?*, The Britannica Dictionary, https://tinyurl.com/ycksbbmy (last visited May 3, 2022). Thus, the most reasonable reading of the Interlocal Agreement is that the clerk of the Florida Supreme Court must agree when a change will *likely* both materially and adversely impact court functions. Based on the evidence Defendant Forman has introduced, this Court cannot say that is the case. Thus, the clerk of the Florida Supreme Court need not sign off on the changes Plaintiff seeks and is not an indispensable party.

Further, this Court agrees with Plaintiff that the agreement between the E-Filing Authority and the Association does not make the Association an indispensable party. Defendant cites section 4(b) of the agreement. It provides that, should the Authority request additional services, those services shall be governed by a separate agreement set out "at the time of requesting such services." ECF No. 41-1 at 30. Defendant does not explain why this provision prevents this Court from according complete relief between the parties without joining the Association. *See* Fed. R. Civ. P. 19(a)(1)(A). Nor does Defendant allege that the Association claims an interest in this action such that its ability to protect that interest would be impeded by this case's disposition or risk exposing the Association to additional or inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B). Nothing that happens here will change the substance

of the agreement currently in place between the Association and the Authority. And Defendant has not articulated how an injunction against the Authority that might require it to seek out a supplemental agreement makes the Association a necessary party as defined by Rule 19.

Defendant Forman "bears the initial burden of showing that the person who was not joined is necessary for a just adjudication." *Weeks v. Hous. Auth. of City of Opp, Ala.*, 292 F.R.D. 689, 692 (M.D. Ala. 2013). And as to both the clerk of the Florida Supreme Court and the Association, she has not carried it.

C

Finally, Defendant Forman argues that this Court should abstain from exercising jurisdiction over Plaintiff's claim under the *Younger* abstention doctrine. ECF No. 26 at 21–26. While there is no ongoing state proceeding at issue in this case, Defendant Forman maintains that Plaintiff asks this Court to "tell the state courts how to conduct their business, without first giving the state courts an opportunity to resolve this issue on their own." *Id.* at 25. This kind of interference with state court operations, Defendant Forman concludes, is proscribed by *Younger* and conflicts with general principles of equity, federalism, and comity. *Id.* at 24–27. Plaintiff responds, first, that *Younger* does not apply because there is no ongoing state proceeding, and, second, that abstention is inapposite in First Amendment cases. ECF No. 42 at 34–42.

The Supreme Court has recognized four categories of abstention: *Pullman*, *Burford*, *Younger*, and *Colorado River*. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Younger v. Harris*, 401 U.S. 37 (1971); *Colo. River Conservation Dist. v. United States*, 424 U.S. 800 (1976). "The *Younger* doctrine 'requires a federal court to abstain where a plaintiff's federal claims could be adjudicated in a pending state judicial proceeding.'" *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1267 (11th Cir. 2019) (quoting *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988)). The doctrine "rests on notions of federalism and comity and the desire to avoid duplicative proceedings," *id.*, but it does not reflect "blind deference to 'States' Rights' any more that it means centralization of control over every important issue in our National Government and its courts," *Younger*, 401 U.S. at 44. Thus, "even when a federal case implicates important state interests, 'federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not refuse to decide a case in deference to the States.'" *Tokyo Gwinnett*, 940 F.3d at 1267 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013)).

Defendant Forman urges this Court to abstain from adjudicating this case under *Younger* just as the Seventh Circuit did in *Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018), and the United States District Court for the Eastern District of Missouri did in *Courthouse News Service v. Gilmer*, 543 F. Supp. 3d 759

(E.D. Mo. 2021). Despite noting that "the case does not fit neatly into the *Younger* doctrine" "because there is no individual, ongoing state proceeding that plaintiffs seek to enjoin," *Gilmer*, 543 F. Supp. 3d at 767 (quoting *Brown*, 908 F.3d at 1072), both courts extended *Younger* abstention in cases nearly identical to the one at bar. In so doing, both courts relied on principles of equity, federalism, and comity, along with the Supreme Court's application of *Younger* in *O'Shea v. Littleton*, 414 U.S. 488 (1974), and *Rizzo v. Goode*, 423 U.S. 362 (1976). *Brown*, 908 F.3d at 1072–75; *Gilmer*, 543 F. Supp. 3d at 766–69.

But in *O'Shea*, the Court applied *Younger* to prevent "an ongoing federal audit of state criminal proceedings," following claims that a municipal court discriminated against African Americans in setting bail and sentencing. 414 U.S. at 500. And in *Rizzo*, the Court reversed an injunction requiring a police department to overhaul its internal disciplinary procedures after minority civilians alleged a pattern of unconstitutional treatment. 423 U.S. at 372–73, 379. These circumstances are not analogous to the instant case, where clerical processing of complaints—divorced from judicial functions—are at issue, and Plaintiff does not seek this Court's supervision over a state agency's internal affairs. Indeed, several other courts have criticized the *Brown* and *Gilmer* courts' reasoning while rejecting *Younger* abstention in similar cases. *See, e.g.*, *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 n.2 (4th Cir. 2021); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 591

n.4 (9th Cir. 2020); *Courthouse News Serv. v. Omundson*, No. 1:21cv305, 2022 WL 1125357, at *7–9 (D. Idaho Apr. 14, 2022); *Courthouse News Serv. v. Price*, No. 1:20cv1260, 2021 WL 5567748, at *6–7 (W.D. Tex. Nov. 29, 2021); *Courthouse News Serv v. N.M. Admin. Office of the Courts*, No. CIV 21-0710, 2021 WL 4710644, at *35–37 (D.N.M. Oct. 8, 2021).

More importantly, the Court has further cabined *Younger* since *O'Shea* and *Rizzo*. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Court held that *Younger* applies only in three "exceptional" circumstances: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367–68 (1989)). Lest there be any doubt about whether these circumstances are exhaustive, the Court stated "[w]e have not applied *Younger* outside these three 'exceptional' categories, and today hold . . . that they define *Younger*'s scope." *Id.* at 78.

This case does not involve state criminal prosecutions or civil enforcement proceedings, thus the first two *Younger* categories can be readily dismissed. As for the third category, no "orders" are at issue here. Plaintiff's allegations target only the clerical processing of complaints. Moreover, as shown above, complaint processing is a ministerial, administrative function, not a practice "uniquely in

furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns*, 571 U.S. at 73. This case thus presents none of the "exceptional" *Younger* categories, and unlike the courts in *Brown* and *Gilmer*, this Court will not invoke "general principles of federalism, comity, and equity" to force *Younger* beyond its defined scope. 908 F.3d at 1071. Accordingly, this Court will not abstain from adjudicating this case under *Younger*.

For these reasons,

**IT IS ORDERED**:

1. Defendant Rushing's motion to dismiss, ECF No. 24, is **GRANTED in part** and **DENIED in part**. Plaintiff's claim against the Florida E-Filing Authority is dismissed.

2. Defendant Forman's motion to dismiss, ECF No. 26, is **DENIED**.

**SO ORDERED on May 4, 2022.**

**s/Mark E. Walker      **
**Chief United States District Judge**
