UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**COURTHOUSE NEWS SERVICE**,

*Plaintiff*,

Case No.: 4:22-cv-106 MW/MAF

v.

**BRENDA D. FORMAN**, in her official capacity as the Broward County Clerk of Courts; and **KAREN E. RUSHING**, in her official capacity as chair of the Florida E-Filing Authority,

*Defendants*.
_____/

**COURTHOUSE NEWS SERVICE'S REPLY TO
KAREN E. RUSHING'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

    I.    Chair Rushing Misstates CNS' Requested Relief ........................................2

    II.   Chair Rushing Cannot Justify Witholding Complaints .............................5

        A.    How Would Non-Confidential Complaints Be Sorted And Stored At The Portal? ..................................................................6

        B.    What About Confidentiality? ...............................................................6

        C.    Who Would Have Online Access? ......................................................7

        D.    There Would Be "Significant Unknown Costs" .................................7

        E.    There Currently Is No System In Place To Achieve This ..................8

    III.  Chair Rushing Raises Red Herring Arguments ...........................................8

        A.    CNS Never Made A Records Request That Was Denied ..................9

        B.    Local vs. Portal Review Is Meaningless .............................................9

        C.    The Portal Is Not A Mail Box ............................................................11

    IV.  Chair Rushing Misapplies Prior CNS Cases .............................................12

CONCLUSION ........................................................................................................15

LOCAL RULE 7.1(F) CERTIFICATE OF COMPLIANCE .................................16

CERTIFICATE OF SERVICE ...............................................................................16

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                             **Page(s)**

*Austin v. Univ. of Fla. Bd. of Trustees*,
   2022 WL 195612 (N.D. Fla. Jan. 1, 2022) ............................................................ 2

*Courthouse News Service v. Gabel*,
   2021 WL 5416650 (D. Vt. Nov. 19, 2021) ........................................... 3, 4, 5, 8, 11

*Courthouse News Service v. Jackson*,
   2009 WL 2163609 (S.D. Tex. July 20, 2009) ....................................................... 8

*Courthouse News Service v. N.M. Admin. Office of the Courts*,
   2021 WL 4710644 (D. N.M. Oct. 8, 2021) ........................................................... 14

*Courthouse News Service v. Omundson*,
   2022 WL 1125357 (D. Idaho Apr. 14, 2022) ....................................................... 3

*Courthouse News Service v. Planet*,
   947 F.3d 581 (9th Cir. 2020) ......................................................................... 12, 13

*Courthouse News Service v. Planet*,
   2021 WL 1605216 (C.D. Cal. Jan. 26, 2021) ...................................................... 13

*Courthouse News Service v. Schaefer*,
   2 F.4th 318 (4th Cir. 2021) ........................................................................... 5, 13

*Courthouse News Service v. Tingling*,
   2016 WL 8505086 ................................................................................................ 8

*Courthouse News Service v. Yamasaki*,
   312 F. Supp. 3d 844 (C.D. Cal. 2018) ................................................................ 12

*Courthouse News Service v. Yamasaki*,
   950 F.3d 640 (9th Cir. 2020) ............................................................................... 12

*In Re Amendments to Fla. Rule of Judicial Admin. 2.420*,
   320 So. 3d 626 (Fla. 2021) .................................................................................. 7

<a>
</a>
<p>
</p>
<s>
</s>

*Leigh v. Salazar*,
  677 F.3d 892 (9th Cir. 2012) .................................................................................. 5

*N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*,
  684 F.3d 286 (2d Cir. 2012) ................................................................................... 5

*Press-Enterprise Co. v. Super. Ct. for Riverside Cty.*,
  478 U.S. 1 (1986) ........................................................................................ *Passim*

Statutes

  § 119.01(2)(a), (2)(c), Fla. Stat. (2021) ................................................................. 8

Other

*Rutter Group Prac. Guide: Fed. Ninth Cir. Civ. App. Prac.* ................................... 12

## **INTRODUCTION**

Pursuant to the Court's scheduling order (ECF 40), Plaintiff Courthouse News Service ("CNS") files this Reply to Defendant Karen E. Rushing's ("Chair Rushing") response in Opposition to Plaintiff's Motion for Preliminary Injunction (ECF 43, "Opposition").[1]

Chair Rushing concedes *Press-Enterprise II* applies and that CNS' right to obtain newly e-filed, non-confidential circuit civil complaints satisfies the "experience and logic" test. *See* Opposition at 13, 15. However, she attempts to reframe this case and the remedy sought, while misapplying law from other CNS cases, to avoid squarely confronting *Press-Enterprise II's* command that, once a First Amendment access right attaches, withholding access can be sustained only if narrowly tailored to preserve an overriding, essential interest. *Press-Enterprise Co. v. Super. Ct. for Riverside Cty.*, 478 U.S. 1, 9 (1986).

CNS does **not** demand instantaneous or immediate access to complaints and does **not** ask this Court to order Chair Rushing to institute a public review queue. Rather, CNS has demonstrated Defendants cannot justify their withholding of access

---

[1] On May 4, 2022, this Court dismissed the Florida E-Filing Authority ("Authority") but found Chair Rushing a proper Defendant (ECF 45). This Court also denied Defendant Brenda D. Forman's motion to dismiss. ECF 43 was jointly filed by Chair Rushing and the Authority. This Reply addresses Chair Rushing only.

under a "no-access-before-processing" practice under *Press-Enterprise II*.[2]  CNS thus seeks to enjoin that practice.  A public review queue is merely one proven, less restrictive available alternative.

Based on her mischaracterization of the relief requested, Chair Rushing raises a litany of "unknowns" about why a public review queue should not be ordered.  But these arguments suffer from the same fatal hurdle: none satisfy *Press-Enterprise II*.  Developing and operating an unconstitutional system—which would naturally require some action to rectify—is no justification for its continuance.  An injunction must be entered now.  *See Austin v. Univ. of Fla. Bd. of Trustees*, No. 1:21cv184-MW-GRJ, 2022 WL 195612, at *26 (N.D. Fla. Jan. 1, 2022), *appeal filed*, No. 22-10448 (11th Cir. Feb. 9, 2022) (when preserving status quo results in continued harm injunction is proper) (citation omitted).

## ARGUMENT

I. **Chair Rushing Misstates CNS' Requested Relief.**

It is first proper to re-orient by reiterating exactly what CNS seeks.  CNS requests an order: (1) "[e]njoining Defendants from continuing their policies and practices of withholding newly e-filed non-confidential circuit civil complaints from

---

[2] Authority-produced records corroborate CNS' Broward County delay statistics at paragraph 60 of the Complaint.  *See* Reply Declaration of Bill Girdner (attached as **Exhibit A**) at ¶ 2, Exhibit 1 (CNS' analysis of Authority data over the same 6-month period CNS tracked).

2

press and public view until after clerical processing;" and (2) "[d]irecting Defendants to provide CNS with access to newly e-filed, non-confidential circuit civil complaints upon their receipt for filing." *See* Preliminary Injunction Motion (ECF 35) at 38. CNS does not demand this Court mandate a public review queue or require instantaneous access. Instead, CNS asks the Court to do what sister courts have already done: order Defendants to abide by access processes compliant with *Press-Enterprise II*.

    Other courts recognize this distinction:

> The Court thus finds that "filed" is equivalent to submission. However, that does not mean the Court is finding "filed" is equivalent to *immediate* access. Again, this might be viewed as a distinction without a difference, but it is not. As CNS notes—and in accordance with *Planet III*—it never sought "immediate" access to court records (in this case or any others). It simply contends that the current schema in Idaho, with its associated delays, cannot be justified.

*CNS v. Omundson*, No. 1:21-cv-00305-DCN, 2022 WL 1125357, at *12 (D. Idaho Apr. 14, 2022); *see also CNS v. Gabel*, No. 2:21-cv-0000132, 2021 WL 5416650, at *9 (D. Vt. Nov. 19, 2021), *appeal filed*, No. 21-3098 (2d Cir. Dec. 17, 2021) (noting it was defendants' placing of complaints in an electronic review queue with no guarantee as to when public access would occur that required First Amendment justification).

    To be clear, here is CNS' position. A filer hits "submit," the complaint is received at the Portal, and automated intake of payment and the complaint itself

3

occurs within seconds to five minutes max. That transaction is comparable to what happened at the intake counter with paper complaints and filing fees. At that point, complaints are sent to clerk work queues -- and they should simultaneously be made publicly available just like paper complaints of old were because Defendants cannot justify withholding access any further. Subsequent clerk staff processing activities, historically called docketing, can occur separately, also like the traditional paper days.

    CNS has established that access does not interfere with clerical processing. For example, the same Granicus software running the Florida Court's E-Filing Portal ("Portal") is used in Arizona to provide a statewide review queue at low cost. *See* Girdner Declaration (ECF 35-1) at ¶¶ 26-27, 29-30, 39-40, 49. But that is not the only less restrictive option. In the federal system and many state court systems, complaints are automatically accepted into the public case docket, *see* Girdner Declaration (ECF 35-1) at ¶¶ 42-47. Chair Rushing acknowledges federal clerks "complete review of all filings after they have already appeared on the PACER website." Opposition at 9. This demonstrates that in an e-filing ecosystem narrower solutions comporting with *Press-Enterprise II* exist. Consequently, there is no justification for continuing a no-access-before-process regime.[3]

---

[3] Moreover, e-filing courts that do not withhold filings for processing typically make newly filed complaints available within minutes, but not instantaneously. That is

## II. Chair Rushing Cannot Justify Withholding Complaints.

The speculation about possible technical and cost barriers hold no water in the *Press-Enterprise II* analysis. In fact, all Chair Rushing offers to challenge a review queue as a viable less restrictive alternative are serial "unknown" costs, "unknown" manpower concerns and unspecified "numerous unknown factors." *See* Weber Declaration (ECF 43-1) at ¶ 13. These "unknowns" do not overcome *Press-Enterprise II*, and this Court cannot credit unsupported conclusions. *See, e.g.*, *CNS v. Schaefer*, 2 F.4th 318, 329 (4th Cir. 2021) ("*Schaefer*") ("argument unsupported by the evidence will not suffice to carry the government's burden"); *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 293, 304 (2d Cir. 2012) (defendant must demonstrate conduct is justified by an "overriding interest" based on "specific, on-the-record findings" that withholding access is "essential to preserve higher values and is narrowly tailored to serve that interest"); *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012) ("court cannot rubber-stamp an access restriction because the government says it is necessary").

Nevertheless, each purported concern is debunked below.

---

the natural result in an e-filing system, where automated software replaces human intake clerks. *See Gabel*, 2021 WL 5416650, at *15. The requested injunction would not result in instantaneous access because auto-routing of complaints into Portal queues can take up to five minutes during high-volume filing periods. *See* Opposition at 7. Technology does operate quickly.

### A.   How Would Non-Confidential Complaints Be Sorted And Stored At The Portal?

Easy. Utilize the Granicus software currently employed that performs the same functions in Arizona. The Opposition establishes the Portal transmits filings into various queues and stores them. It maintains incoming filing queues, multiple county queues, and a correction queue. *See* Opposition at 5-6. A public review queue is just another queue. And the Authority admits a contractor can create that queue. *See* Authority's Response to CNS' First Set of Interrogatories at No. 7 (attached as **Exhibit B**).

Sorting would be accomplished through the process already detailed by CNS. *See* Angione Declaration (ECF 35-3) at ¶¶ 19-45. Before a document is filed, the filer indicates it is a complaint, whether it is one of three civil case types (Jimmy Ryce, sexual assault, medical malpractice) flagged by court rule, and whether it otherwise contains confidential information. Tags allow instant sorting by Granicus software. Finally, a public review queue can be set to maintain complaints for whatever timeframe chosen before automatically deleting them from the queue. *See* **Exhibit A** at ¶ 4.

### B.   What About Confidentiality?

Handled. CNS asks only for non-confidential complaints. Software can automatically push only non-confidential complaints to a public queue based on the information tags provided by filers.

6

Moreover, Chair Rushing acknowledges there is no longer any Rule 2.420 requirement that clerks review the non-confidential complaints CNS seeks for confidential information. *See* Opposition at 7 (citing *In Re Amendments to Fla. Rule of Judicial Admin. 2.420*, 320 So. 3d 626 (Fla. 2021)). Clerk Forman recognizes this too, as does The Florida Bar. *See* Reply Declaration of Nichole Parsons (attached as **Exhibit C**) at ¶¶ 3-4 and exhibits.

Finally, the Florida Supreme Court's governing Access Security "Matrix"—which sets forth online access permissions for court records based on user role and document type—designates the complaints at issue here as "P" for public, meaning no access restrictions attach. *See id.* at ¶¶ 5-7 and exhibits.

### C. Who Would Have Online Access?

The public, pursuant to the First Amendment.

### D. There Would Be "Significant Unknown Costs."

Nonsense. Not only is this argument conclusory, wholly speculative, and self-contradicting, but it is belied by Arizona's experience. It cost $12,500 to build Arizona's Granicus review queue, a modest expense to correct an ongoing constitutional violation of Defendants' own design. *See* Girdner Declaration (ECF 35-1) at ¶ 39. The very Portal employee submitting a declaration here was in communication with Granicus about Arizona already, so answers are available. *See id.* at Exhibit 2.

7

### E. There Currently Is No System In Place To Achieve This.

Exactly. And that is why CNS had to file this lawsuit challenging Defendants' no-access-before-process policies. And while the Authority (or Chair Rushing) may not have the internal ability to implement change (*see* Opposition at 11), the Portal vendor can.

At bottom, arguments like these have been made and rejected in similar contexts. *See, e.g.*, *Gabel*, 2021 WL 5416650, at *13; *CNS v. Tingling*, 16 Civ. 8742 (ER), 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016); *CNS v. Jackson*, No. H-09-1844, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009). They deserve no more credence here. Defendants implemented a system that violates public access rights; they are charged with fixing it.[4]

### III. Chair Rushing Raises Red Herring Arguments.

Chair Rushing also peppers the Opposition with arguments that ultimately have no bearing on the constitutional question presented.

---

[4] Instructive parallel admonitions are found within Florida's Public Records Act for state agencies considering acting like the Defendants. It states, "[a]utomation of public records must not erode the right of access to those records" and that "[a]n agency may not enter into a contract for the creation or maintenance of a public records database if that contract impairs the ability of the public to inspect or copy the public records of the agency, including public records that are online or stored in an electronic recordkeeping system used by the agency." § 119.01(2)(a), (2)(c), Fla. Stat. (2021).

### A.    *CNS Never Made A Records Request That Was Denied.*

Chair Rushing claims that because CNS purportedly never made a records request that the Authority refused an injunction is improper. *See* Opposition at 12. This is factually incorrect and legally insignificant.

CNS wrote the Authority twice, on January 4, 2022, and February 23, 2022, specifically requesting pre-processing access to complaints. *See* Parsons Declaration (ECF 35-4) at Exhibits 2, 4. Those requests went substantively unanswered.

Moreover, a specific records request is unnecessary where CNS is challenging an ongoing, systemwide flaw that fails *Press-Enterprise II* each and every time a complaint is filed. It is further illogical to mandate a specific request for access to complaints whose existence only become known *after* a case is processed into a local docket, particularly when Chair Rushing's position is that local clerks are responsible for providing access (*see* Opposition at 5-8, 16). Finally, regardless of any records request procedures claimed, they cannot trump the First Amendment.

### B.    *Local vs. Portal Review is Meaningless.*

Chair Rushing raises another distraction arguing that because some county clerks (including, she claims, Clerk Forman) utilize a "Local" review[5] or work queue

---

[5] "Local" review is contrasted with "Portal" review, the latter being where filings are reviewed/processed by clerks within the Portal itself. *See* Opposition at 5-6.

9

where the Portal pushes complaints directly into the local CMS for processing, she can wash her hands of "exclusive" control over complaints.[6]  *See* Opposition at 5-6, 16.

This distinction has no bearing on the *Press-Enterprise II* analysis.  First, Chair Rushing cannot—and does not—dispute the Authority is the entity that first receives complaints.  Access rights attach at this point. *See* ECF 35 (CNS Preliminary Injunction Motion) at 26-28.  Those rights do not vanish or wholly shift to another party because Chair Rushing also transmits those complaints to a clerk's local CMS.  Chair Rushing need not have the "exclusive" control (*see id.* at 16) she emphasizes.  In fact, each time Chair Rushing transmits a Complaint to local clerks—whether through Local or Portal queues—she contributes to the constitutional violation because those complaints are now fated to the no-access-before-process scheme.  Chair Rushing's behavior is inextricably intertwined with the routine withholding of public complaints.

Moreover, the described queues further demonstrate that less restrictive alternatives to withholding complaints for processing exist within the Portal, *e.g.*, a public review queue.

---

[6] This is another attempt to shift all blame to Clerk Forman when Chair Rushing is equally culpable.  The reality is that, like traditional paper courts that required multiple copies of complaints be filed, there are multiple replications of electronic complaints filed through the Portal.  Electronic records can be infinitely copied.

10

### C. The Portal Is Not A "Mailbox."

Chair Rushing doubles down on her purported passive role in the e-filing process, dubbing the Portal a "mailbox" from which clerks retrieve daily filings. *See* Opposition at 8. Untrue.

She also describes the Portal's critical functions: (1) providing the mandatory e-filing access point; (2) maintaining a main queue housing filings prior to distribution; (3) sorting and transmitting filings by county; (4) providing a Portal review queue whereby local clerks work within the Portal to process filings; (5) maintaining a correction queue to house deficient filings; (6) notifying filers when filings are received; and (7) receiving notifications when local clerks accept a filing. *See id.* at 4-9.

The Portal is the mandatory e-filing source statewide. Plus, the level of document management and interactivity with local clerks is a far cry from an inert mailbox. It demonstrates the Portal is a sophisticated system integral to court functions. That it operates with the speed and efficiency described to distribute filings to clerks underscores its technical ability to also provide pre-processing public access to complaints.

Courts have rejected similar attempts to characterize e-filing systems as mailboxes. *See Gabel*, 2021 WL 5416650, at *9 (finding comparison of e-filing system to traditional mail system "nonsensical" given e-filing system presents no

11

physical barriers that would make immediate public access to complaints impractical).

### IV. Chair Rushing Misapplies Prior CNS Cases.

Finally, Chair Rushing attempts to use prior CNS case holdings discussing what constitutes "timely" access to suggest a leisurely approach to access is constitutional. This too misses the mark. She first cites a vacated decision[7] (see Opposition at 12), while failing to acknowledge numerous cases prohibiting withholding complaints before processing is completed. *See supra*. Primarily, Chair Rushing asserts that *CNS v. Planet*, 947 F.3d 581 (9th Cir. 2020) ("*Planet III*") and *Schaefer* do not support on-receipt access prior to processing. *See* Opposition at 13-15. She is mistaken.

In *Planet III*, the Ninth Circuit rejected the clerk's former "no access before processing" policy because the clerk failed to "demonstrate… there is a 'substantial probability' that its [asserted] interest [to protect confidentiality]" "would be impaired by immediate access, and . . . that no reasonable alternatives exist to

---

[7] The district court decision cited, *CNS v. Yamasaki*, 312 F. Supp. 3d 844 (C.D. Cal. 2018), was vacated and remanded on its merits "for further proceedings consistent with [*Planet III*]." *See CNS v. Yamasaki*, 950 F.3d 640 (9th Cir. 2020). It has no force because "the Ninth Circuit's vacatur of a district court judgment nullifies and renders the judgment inoperative." Rutter Group Prac. Guide: Fed. Ninth Cir. Civ. App. Prac. Ch. 10-E § 10:260.

12

'adequately protect' that government interest." *Id.* at 596-98 (quoting *Press Enterprise II*, 478 U.S. at 14). On remand, the district court permanently enjoined the clerk from refusing to make newly filed civil complaints available until after processing, requiring access "when new complaints are received by [the] court…rather than after the performance of administrative tasks that follow the court's receipt of a new complaint." *See CNS v. Planet*, No. CV 11-8083-DMG (FFMx), 2021 WL 1605216, at *1 (C.D. Cal. Jan. 26, 2021).[8]

Similarly, in *Schaefer*, the Fourth Circuit concluded the right of access requires "courts to make newly filed civil complaints available as expeditiously as possible." *Schaefer*, 2 F.4th at 329. The court mandated "contemporaneous access" and defined it as access on the same day as filing as practicable. *Id.* at 328. In e-filing courts like Florida's, contemporaneous access, upon receipt and prior to

---

[8] Rushing's assertion that *Planet III* broadly found "overnight delays" in access do not violate the First Amendment is wrong. The "overnight delays" in *Planet III* involved separate scanning policies and occurred several years prior to the Ninth Circuit's opinion when "Ventura County was undergoing severe budget constraints" and reduced the courthouse closing time to 3:00 p.m. while allowing new paper filings until 4:30 p.m. 947 F.3d at 599. Ventura County had "demonstrated that the overnight delay in access to complaints filed during the last ninety minutes of the court's public hours would be no greater than essential to manage necessary court operations *under the circumstances existing at the time*." *Id.* (emphasis added). By the time summary judgment motions were filed, Ventura County had synchronized courthouse hours and filing deadlines, providing same-day access to approximately 97% of new complaints. *Id.* at 597.

13

processing, is imminently practicable because software automates manual intake procedures.

Chair Rushing also cites New Mexico CNS access litigation as evidence that on-receipt access is not mandated. *See* Opposition at 14. But there, the court did not apply that portion of *Press Enterprise II* requiring New Mexico to justify its restrictions as narrowly tailored to achieve an overriding, essential interest. *See CNS v. N.M. Admin. Office of the Courts*, No. CIV 21-0710 JB/LF, 2021 WL 4710644, at *37-*41 (D. N.M. Oct. 8, 2021), *appeal filed*, No. 21-2135 (10th Cir. Oct. 29, 2021). Instead, the court erroneously concluded, without explanation, that a "limit of five business hours" replicates traditional access from paper filing environments (nevertheless finding the "great bulk of complaints should be available to the press on the day that they are filed"). *See id.* This finding deviated from record evidence by incorrectly concluding the press historically received access *after* docketing; CNS' editor testified there, as here, that traditional access is "after the case is received and before it is docketed; what's now called processing." *See* Case No. 1:21-cv-00710, Doc. No. 35, at 5.

14

## **CONCLUSION**

For the foregoing additional reasons, a preliminary injunction should be granted.

Dated: May 5, 2022                    Respectfully submitted,

                                      THOMAS & LOCICERO PL

                                      /s/ *Carol Jean LoCicero*
                                      Carol Jean LoCicero (FBN 603030)
                                      Mark Caramanica (FBN 110581)
                                      601 South Boulevard
                                      Tampa, FL 33606
                                      Telephone: (813) 984-3060
                                      Facsimile: (813) 984-3070
                                      clocicero@tlolawfirm.com
                                      mcaramanica@tlolawfirm.com
                                      tgilley@tlolawfirm.com

                                      Daniela B. Abratt (FBN 118053)
                                      915 Middle River Drive, Suite 309
                                      Fort Lauderdale, FL 33304
                                      Telephone: (954) 703-3418
                                      dabratt@tlolawfirm.com
                                      bbrennan@tlolawfirm.com

                                      -and-

                                      Jonathan E. Ginsberg (*pro hac vice*)
                                      BRYAN CAVE LEIGHTON PAISNER LLP
                                      1290 Avenue of the Americas
                                      New York, NY  10104
                                      Telephone: (212) 541-1130
                                      jon.ginsberg@bclplaw.com
                                      dortiz@bclplaw.com

                                      *Attorneys for Plaintiff Courthouse News*
                                         *Service*

15

## LOCAL RULE 7.1(F) CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law contains 3,186 words, with such word count incorporating all portions of this document subject to the word limitations imposed under Local Rule 7.1(F).

/s/ *Carol Jean LoCicero*
Carol Jean LoCicero

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing will be served by electronic service through the Clerk of the Court's CM/ECF filing system. I further certify that the foregoing document will be mailed by first class mail, postage prepaid, to any parties that do not participate in the CM/ECF filing system. Dated: May 5, 2022

/s/ *Carol Jean LoCicero*
Carol Jean LoCicero