UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**COURTHOUSE NEWS SERVICE**,

    *Plaintiff*,

v.

**BRENDA D. FORMAN**, in her official capacity as the Broward County Clerk of Courts; and **KAREN E. RUSHING**, in her official capacity as chair of the Florida E-Filing Authority,

    *Defendants*.
_____/

Case No.: 4:22-cv-106 MW/MAF

**PLAINTIFF COURTHOUSE NEWS SERVICE'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

On May 12, 2022, at the close of the hearing on Plaintiff's Motion for Preliminary Injunction, the Court granted the parties an opportunity to submit supplemental briefing. Accordingly, Plaintiff Courthouse News Service ("CNS") files this Supplemental Brief to address a limited number of issues raised during the hearing.

**I.**    **New Complaints Are Court Records Upon Filing At The Portal.**

Chair Rushing argues that the Florida Rules of General Practice & Judicial Administration define "court records" in such a way that newly filed complaints do not become "court records" – and thus do not trigger CNS' First Amendment right

of access – until they are "accepted" by clerks of court. *See* Preliminary Injunction Transcript ("Trans.") at 85-86. This argument is wrong.

The Rules of Judicial Administration include two rules defining "court records," Rules 2.420 and 2.430. But neither definition hinges on the clerk's "acceptance" of a document. Rather, in relevant part, Rule 2.420 provides:

> **(b) Definitions.**
>
>> (1) "Records of the judicial branch" are all records, regardless of physical form, characteristics, or means of transmission, ***made or received in connection with the transaction of official business*** by any judicial branch entity and consist of:
>>
>>> (A) "court records," which are the contents of the court file, including the progress docket and other similar records generated to document activity in a case, transcripts filed with the clerk, documentary exhibits in the custody of the clerk, and electronic records, videotapes, or stenographic tapes of depositions or other proceedings filed with the clerk, and electronic records, videotapes, or stenographic tapes of court proceedings. . . .

Fla. R. Jud. Admin. 2.420(b) (emphasis added).[1]

Likewise, Rule 2.430 provides, in relevant part:

> **(a) Definitions.** The following definitions apply to this rule:
>
>> (1) "Court records" mean the contents of the court file, including the progress docket and other similar records generated to document activity in a case, transcripts filed with the clerk, documentary exhibits in the custody of the clerk, and electronic records, video tapes, or

---

[1] In July 2021, the Florida Supreme Court amended Rule 2.420's subsection (d), concerning the confidentiality of certain filings, "to address *timely access to court records*." *In re Amend. to Fla. R. of Jud. Admin. 2.420*, 320 So. 3d 626, 627 n.1 (Fla. 2021) (emphasis added). Nowhere in the adopting opinion does the Court mention concerns about the liability of clerks.

2

> stenographic tapes of depositions or other proceedings filed with the clerk, and electronic records, videotapes or stenographic tapes of court proceedings.

*Id.* at 2.430(a).

Neither rule requires "acceptance" of a document by the clerk as a prerequisite to the document becoming a "court record." In fact, the words "accept" and "acceptance" appear nowhere in the definitions.

Instead, Florida courts have consistently held that a document is filed with the court, meaning it is received, upon delivery to the proper officer. *See, e.g.*, *Strax Rejuvenation & Aesthetics Inst., Inc. v. Shield*, 49 So.3d 741, 743 (Fla. 2010) ("filing is accomplished by simply placing the document in the hands of the proper officer"); *Mansfield v. R.J. Reynolds Tobacco Co.*, 230 So.3d 181, 182 (Fla. 5th DCA 2017) ("filing of a complaint 'is complete once the pleading is delivered to and received by the proper officer'"); *Raysor v. Raysor*, 706 So.2d 400, 401 (Fla. 1st DCA 1998) (a document is filed when it is "delivered to the proper official and received by that official to be kept on file").

Florida requires that new complaints be e-filed, which is done at the Portal. It is at this moment of filing/receipt that the public right of access to such complaints attaches, under both Florida law and the First Amendment. *See Palm Beach Newspapers, Inc. v. Burk*, 471 So.2d 571, 574-75 (Fla. 4th DCA 1985) (public access rights triggered by filing of documents); Art. I, §24(a), Fla. Const. ("Every person

3

has the right to inspect or copy any public record made *or received* in connection with the official business of any public body…[t]his section specifically includes the legislative, executive, and judicial branches…"). *See also CNS v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021) ("the press and public enjoy a First Amendment right of access to newly filed civil complaints"); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141-43 (2d Cir. 2016) ("A [f]inding that a document is a judicial document triggers a presumption of public access") (internal quotation omitted); *CNS v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020) ("qualified right of access to nonconfidential civil complaints arises when they are filed with the court…").

Thus, contrary to Chair Rushing's argument, a document's status as a court record, and the concomitant right of access, are not contingent upon the clerk's "acceptance" of a complaint; they arise upon the complaint's filing at the Portal. Moreover, even if the rule required "acceptance," it obviously could not trump the First Amendment.

## II. Defendants Are Not Entitled To Maintain A Status Quo That Violates CNS' First Amendment Rights.

At the hearing, Defendants argued that a preliminary injunction should be denied because it would alter the status quo by compelling them to change their procedures for access to newly filed complaints. Trans. at 84. But the law is clear that "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the

injury, e.g., by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Melendez v. Sec., Fla. Dep't of Corrs.*, No. 21-13455, 2022 WL 1124753, at *18 (11th Cir. Apr. 15, 2022) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974));[2] *Austin v. Univ. of Fla. Bd. of Trs.*, No. 1:21cv184-MW-GRJ, 2022 WL 195612, at *26 (N.D. Fla. Jan. 1, 2022), *appeal filed*, No. 22-10448 (11th Cir. Feb. 9, 2022) (same).  Here, the status quo violates the First Amendment and irreparably injures CNS and the public.  Thus, it is necessary and proper for a preliminary injunction to rectify that injury.

**III.   Creating A Public Access Queue Is A Practicable Less Restrictive Alternative And Both Defendants' Actions Combine to Withhold Access.**

Chair Rushing contends that the violation of CNS' First Amendment right of access occurs not at the Portal, but at Clerk Forman's Office.  Thus, in Chair Rushing's view, relief can be provided solely by Clerk Forman and any injunction must be directed at her.  There are numerous problems with this argument, however.

First and foremost, Chair Rushing unequivocally admits that the Authority has the capability to provide a public review queue.  According to her counsel, "a public access queue can be created.  We agree with that." Trans. at 87.  Unfortunately, she appears unwilling to take any steps to provide this queue – or any other resolution.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

This unwillingness appears to arise from her contention that Clerk Forman is the sole cause of delays. But the reality is not so simple. The fact of the matter is that the Authority, together with the clerks of court, have implemented an e-filing system that necessarily delays public access to court records, in violation of the First Amendment.

CNS has established a First Amendment right of access to new non-confidential complaints that arises when they are filed at the Portal. Having made that showing, the burden has shifted to Defendants to show that such "closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Press-Enterprise Co. v. Super. Ct. for Riverside Cty. ("Press-Enterprise II")*, 478 U.S. 1, 13-14 (1986). Defendants have failed to carry this burden.

Instead, what was revealed at the hearing is that the very system implemented by Defendants unlawfully closes off public access. The Portal receives new non-confidential circuit civil complaints and, as the Court recognized, dumps them "en masse" into the Broward County work queue without any filtering or sorting. Trans. at 101. As a result, those complaints languish in Broward County's queue until someone processes the complaints and "physically go[es] in and check[s] a box on every individual filing" to accept them before they become public. *Id.* Chair Rushing blames Clerk Forman, while Clerk Forman points a finger at Chair Rushing – when it is their combined practices that frustrate the First Amendment. Defendants

have utterly failed to show – or even attempt to show – that their current process for providing public access is essential to preserve higher values and is narrowly tailored to serve those interests. Having failed to make this showing, Defendants should be enjoined from withholding public access to e-filed, non-confidential circuit civil complaints after automated intake at the Portal occurs.

The most straightforward and logical response to such an injunction would be the creation of a public review queue. As noted above, Defendants admit they are capable of providing this solution. This solution has already been provided by their own vendor, in fact, to the state of Arizona.

## IV.  Proposed Relief.

The Court recognized the critical role of the press in informing the public: "[I]t's not hyperbole to talk about the critical nature of the Fourth Estate, not only in this country, but in any healthy democracy. . . ." Trans. at 57. The Court further recognized the irony present in a case involving public access delays in an electronic environment: "If anything, putting stuff online should have expedited access, not delayed it." Trans. at 65. And the Court likewise recognized the problems inherent in the Defendants' chosen structure, noting that "the delay is, in fact, caused by the very structure and nature of the system that's handed out on high [by] Mr. Stewart's clients." Trans. at 101. As importantly, the Court recognized a review queue operates using a simple filter to segregate any confidential filings out of the much

greater flow of non-confidential, public filings, which is how Arizona's queue functions, using the same vendor as Florida. Trans. at 95. An injunction is the remedy to redress this constitutional wrong.

Based upon the foregoing, and CNS' pleadings, its Motion for Preliminary Injunction, its supporting Declarations, and the arguments presented at the Preliminary Injunction hearing, CNS submits that a preliminary injunction should be granted, along the following lines:

(Proposed) Findings:

    1.    Plaintiff is likely to succeed on the merits. Under *Press Enterprise II*'s "experience and logic" test, a qualified First Amendment right of access to newly filed, non-confidential circuit civil complaints attaches on their receipt by the Portal. Plaintiff has satisfied its burden of establishing there is a tradition of access to non-confidential civil complaints and that paper-filed complaints were historically publicly accessible minutes after they were received and went through manual intake, but before processing. Intake of e-filed complaints is automated at the Portal and likewise occurs from within seconds to a maximum of 5 minutes at peak filing times before the complaints are sent by the Portal to a work queue to be processed.

    2.    Delays in public access to newly-filed, non-confidential circuit civil complaints filed to Broward County are pervasive. For example, access

is delayed two days or more for almost half of those complaints. Less than 15% of those complaints are publicly available on the day of filing.

      3.     When the right of access is established, it becomes Defendants' burden to justify any delays in public access to non-confidential circuit civil complaints by establishing an "overriding interest" that is "essential to preserving higher values that is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 9. Defendants bear this burden under *Press-Enterprise II* and have not provided record evidence of a narrowly-tailored justification. Public access does not interfere with clerical processing of non-confidential circuit civil complaints and filers bear the sole responsibility under Rule 2.420 for addressing any confidential information included in complaints. Defendants' practice of withholding non-confidential circuit civil complaints while they sit in a work queue until the completion of clerical processing is not narrowly tailored to serve the interests asserted because less restrictive alternatives such as a public review queue for access to non-confidential circuit civil complaints and auto-accepting such complaints into public dockets are available. In addition, the Authority admits that "a public access" queue "can be created." Trans. at 87. Because the Authority can provide a filtered public review queue, less restrictive means are available. The record shows that Arizona provides a review queue for access to non-

confidential civil complaints through the same software vendor, Granicus, that the Portal uses.

    4.    Both Defendants receive non-confidential circuit civil complaints subject to the qualified First Amendment right of access and both follow policies and practices that deny public access rights.  With regard to the Authority, new civil complaints must be filed at the Portal.  Upon such filing, the Authority becomes the custodian of those records and a First Amendment right of access attaches, but the Authority provides no public access to these records.  In addition, the Authority, via the Portal, then delivers those documents en masse to clerk queues where clerks must physically check a box for each filing before it becomes publicly available, thereby delaying public access.  With regard to Clerk Forman, upon receipt of newly filed, non-confidential circuit civil complaints, her office undertakes clerical processing before providing public access, though processing before access is not necessary, resulting in unnecessary delays in public access.  Jointly and severally, the Defendants are infringing upon Plaintiff's First Amendment right of access to newly filed, non-confidential circuit civil complaints.

(Proposed) Injunction:

    5.    Consequently, Defendants are hereby enjoined from withholding public access to electronically filed, non-confidential circuit civil complaints

upon the completion of automated intake at the Portal. Defendants are further enjoined from withholding public access to electronically filed, non-confidential circuit civil complaints while they sit in a work queue until the completion of clerical processing.

## CONCLUSION

WHEREFORE, CNS respectfully requests that the Court grant its Motion for Preliminary Injunction, enjoin Defendants as described above, and grant such other and further relief as the Court deems just and proper.

Dated: May 17, 2022          Respectfully submitted,

THOMAS & LOCICERO PL

/s/ *Carol Jean LoCicero*
Carol Jean LoCicero (FBN 603030)
Mark Caramanica (FBN 110581)
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
clocicero@tlolawfirm.com
mcaramanica@tlolawfirm.com
tgilley@tlolawfirm.com

Daniela B. Abratt (FBN 118053)
915 Middle River Drive, Suite 309
Fort Lauderdale, FL 33304
Telephone: (954) 703-3418
Facsimile: (954) 400-5415
dabratt@tlolawfirm.com
bbrennan@tlolawfirm.com

-and-

        Jonathan E. Ginsberg (*pro hac vice*)
        BRYAN CAVE LEIGHTON PAISNER LLP
        1290 Avenue of the Americas
        New York, NY  10104
        Telephone: (212) 541-1130
        jon.ginsberg@bclplaw.com
        dortiz@bclplaw.com

        *Attorneys for Plaintiff Courthouse News Service*

## LOCAL RULE 7.1(F) CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law contains 2,354 words, with such word count incorporating all portions of this document subject to the word limitations imposed under Local Rule 7.1(F).

        /s/ *Carol Jean LoCicero*
        Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 17, 2022, a true and correct copy of the foregoing will be served by electronic service through the Clerk of the Court's CM/ECF filing system.  I further certify that the foregoing document will be mailed by first class mail, postage prepaid, to any parties that do not participate in the CM/ECF filing system.

        /s/ *Carol Jean LoCicero*
        Attorney